### State v. Renner
*[Cite as 6 AOA 156]*

*Case No. CA-958*
*Ashland County, (5th)*
*Decided August 31, 1990*

Robert P. DeSanto, Prosecuting Attorney, Ramona J. Rogers, Ass't Prosecuting Attorney, 307 Orange Street, Ashland, Ohio 44805, for Plaintiff-Appellee.

Damian J. Vercillo, Henderson, Harpster, Vanosdall & Vercillo, 60 West Second Street, P.O. Box 127, Ashland, Ohio 44805, for Defendant-Appellant.

MILLIGAN, P.J.

An Ashland County Court of Common Pleas jury convicted appellant of abduction with a firearm specification (R.C. 2905.02(A)(2), 2941.141), carrying a concealed weapon (R.C. 2923.12(A)), and illegal possession of a firearm in a liquor permit premises (R.C. 2923.121(A)). He appeals, assigning six errors:

"ASSIGNMENT OF ERROR NO. I
THE TRIAL COURT ERRED IN OVER-RULING DEFENDANT-APPELLANT'S MO-TION FOR ACQUITTAL PURSUANT TO OHIO CRIMINAL RULE 29 AT THE CLOSE OF THE STATE'S CASE AS SAID RULING WAS NOT SUSTAINED BY THE WEIGHT OF THE EVIDENCE AND WAS CONTRARY TO LAW.

"ASSIGNMENT OF ERROR NO. II
THE VERDICT IN THE PRESENT CASE WAS NOT SUSTAINED BY THE GREATER WEIGHT OF THE EVIDENCE AND WAS CONTRARY TO LAW.

"ASSIGNMENT OF ERROR NO. III
THE TRIAL COURT ERRED IN CALLING TANYA RENNER, THE VICTIM OF THE CHARGE OF ABDUCTION, AS ITS OWN WITNESS IN THE PRESENT CASE THERE-BY ALLOWING THE PLAINTIFF-APPEL-LEE, STATE OF OHIO, TO CROSS-EXAMINE SAID WITNESS AS SAID RULING AND PROCEDURE WAS CONTRARY TO LAW, AN ABUSE OF DISCRETION AND VIOLAT-ED DEFENDANT-APPELLANT'S CONSTI-TUTIONAL RIGHTS AND IN PARTICULAR, HIS RIGHT TO DUE PROCESS BY DEPRIVING HIM OF A FAIR TRIAL.

"ASSIGNMENT OF ERROR NO. IV
THE TRIAL COURT ERRED IN SUSTAIN-ING PLAINTIFF-APPELLEE'S OBJECTION IN NOT ALLOWING TANYA RENNER, THE VICTIM OF THE ALLEGED ABDUCTION, TO TESTIFY AS TO WHY SHE WAS ABLE TO RECALL THAT DEFENDANT-APPEL-LANT DID NOT GRAB HER AROUND THE NECK AND/OR SHOULDER AREA.

"ASSIGNMENT OF ERROR NO. V
THE TRIAL COURT ERRED IN SUSTAIN-ING PLAINTIFF-APPELLEE 'S OBJECTION AND NOT ALLOWING TANYA RENNER, THE VICTIM OF THE ALLEGED ABDUC-TION, TO TESTIFY AS TO WHETHER OR NOT HER LIBERTY WAS RESTRAINED AS REQUIRED BY THE ELEMENTS OF THE CHARGE OF ABDUCTION.

"ASSIGNMENT OF ERROR NO. VI
THE VERDICT OF GUILTY IN THE PRES-ENT CASE ON THE FIREARM SPECIFI-CATION IN VIOLATION OF SECTION 2941.141 WAS NOT SUSTAINED BY THE GREATER WEIGHT OF THE EVIDENCE AND WAS CONTRARY TO LAW IN THAT THE COURT DID NOT INSTRUCT THE JURY THAT IT WAS NECESSARY FOR THEM TO FIND THAT THE FIREARM IN QUESTION WAS OPERABLE AND FUR-THER, THE JURY DID NOT MAKE A FINDING THE FIREARM IN QUESTION WAS OPERABLE."

On the afternoon of October 8, 1989, appellant and his wife took their two sons to Pizza Hut. They began to argue on the way to the

restaurant. They continued to argue inside Pizza Hut.

Several patrons and employees in Pizza Hut watched the Renners and listened to their arguments. Several nearby patrons heard appellant repeatedly threaten to "blow her [his wife's] head off."

At one point, Mrs. Renner walked to the rest room, followed by appellant. At this time, several patrons noticed a gun protruding from the waistband of appellant's pants. Appellant opened the rest room door after his wife went in, grabbed her arm and pulled her out, again threatening her life. He held her around the neck and shoulder area and forced her back to their booth.

At this time, the manager of Pizza Hut asked appellant if he had a gun, which appellant denied. The manager asked them to leave. While appellant paid the bill, Mrs. Renner and the children went to the car. She tried to lock appellant out, but he pushed his way into the passenger seat. Appellant had his left arm around her neck-and shoulder area and held the gun to her head with the other hand. They began to struggle over the gun.

Two police officers arrived on the scene. After a struggle during which the gun discharged, the officers were able to retrieve the gun from appellant.

Mrs. Renner was called to testify by the court, thus allowing the State to cross-examine her. She said that she went to the rest room area at Pizza Hut to call the police. Appellant told her he would take her out the back door if she called the police, which she took to mean he would beat her up. She admitted that she earlier had told the police she thought appellant would shoot her if she made the call. She said she was not sure if she was frightened in the car, but she did not want appellant in the car. When he held the gun in front of her face, she was able to look directly down the barrel. She begged him not to do this in front of the children. He said he wanted the kids to know what he was going to do to her to have to serve twenty years in prison. She said she felt free to do what she wanted during the course of the incident, but admitted that she did not feel free to go and leave her children behind.

## I

Appellant argues that the court erred in overruling his motion for acquittal under Crim. R. 29(A) regarding the abduction charge and the accompanying firearm specification.

This court cannot reverse the verdict if the trier of fact could reasonably conclude from substantial evidence that the State has proved every element of the offense beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. We must view the evidence in a light most favorable to the prosecution. *State v. Sowell* (1988), 39 Ohio St.3d 322, 530 N.E.2d 1294, 1306, *cert. denied* (1989), 109 S.Ct. 1766.

The elements of abduction are:

"(A) No person, without privilege to do so, shall knowingly do any of the following:

"***

"(2) By force or threat, restrain another of his liberty, under circumstances which create a risk of physical harm to the victim, or place him in fear;"

R.C. 2905.02(A)(2).

Appellant specifically argues that the evidence was insufficient to prove that Mrs. Renner's liberty was restrained under circumstances creating a risk of physical harm to her or placing her in fear.

While Mrs. Renner said she felt free to come and go, she also stated that she did not feel free to go and leave her children behind. Several witnesses testified that appellant forced her back to her booth in the restaurant with his hand around her neck and shoulder. These witnesses also testified that his left arm was around her neck and shoulder in the car while he held a gun to her head. There was sufficient evidence that her liberty was restrained for the jury to find this element proved beyond a reasonable doubt.

Appellant relies heavily on Mrs. Renner's statement that she was not in any fear that her husband would shoot her. However, she did testify that she was fearful that her husband would physically assault her, and she was fearful of what would have happened if she was not able to hold the gun down as the two struggled in the car. The statute does not require the victim to be placed in fear. The elements of abduction are satisfied if the circumstances create a risk of physical harm to the victim. The evidence that appellant held a gun to his wife's head and that she could look directly down the barrel is certainly sufficient to prove that a risk of physical harm was created to Mrs. Renner.

Appellant does not contest the fact that he was carrying a firearm at the time of the incident. As we find sufficient evidence to support the abduction conviction, the accompanying firearm specification is also supported by suffi-

cient evidence. The first assignment of error is overruled.

## II

In reviewing a claim that a jury verdict is against the weight of the evidence, our duty is to review the record to determine if there was sufficient evidence for the jury to find the defendant guilty beyond a reasonable doubt. *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, at syllabus 4, *cert. denied* (1989), 103 L.Ed.2d 239. There was sufficient evidence to support both the abduction conviction and the accompanying firearm specification.

The second assignment of error is overruled.

## III

Under Evid. R. 614, the court may call witnesses on its own motion or at the suggestion of a party; all parties may cross-examine a witness called by the court. Appellant argues that the court abused its discretion in calling Mrs. Renner at the State's suggestion, allowing the State to circumvent Evid. R. 607's requirement of showing surprise or affirmative damage before impeaching one's own witness with a prior inconsistent statement.

When the trial court calls a witness on its own motion as requested by the State, the State may impeach the witness with prior inconsistent statements even though the State cannot demonstrate surprise. *State v. Dacons* (1982), 5 Ohio App.3d 112, 449 N.E. 2d 507, at syllabus. Evid. R. 607 and 614 codify the common law applicable when *State v. Adams* (1980), 62 Ohio St.2d 151, 404 N.E. 2d 144, was decided. *Dacons, supra,* at 115.

In *Adams,* the State requested the court to call a witness, as the witness' statements were in conflict. The Ohio Supreme Court held that the trial court did not abuse its discretion in calling her as a witness on its own motion. *Id.,* at 149. The court noted that at the time the witness was called, the State had established a *prima facia* case against the defendant. *Id.* The trial court had ample justification to conclude that the testimony would be beneficial to the jury. *Id.* The trial court's examination was short, and the bulk of the testimony was elicited by trial counsel. *Id.*

In this case, Mrs. Renner made several inconsistent statements prior to trial. The court had before it evidence of her potential bias, unrelated to the facts of the case, toward the appellant:

She had dropped the dissolution action which she had filed, spoke with him frequently while he was in jail, and hoped to reconcile with him. At the time Mrs. Renner was called, the State had established a *prima facie* case. Several witnesses testified that they saw appellant grab Mrs. Renner around the neck or shoulder, heard him threaten to blow her head off, and saw him hold a gun to her head. Because Mrs. Renner was the victim of the abduction, the court had ample justification to believe that her testimony would benefit the jury.

The trial court only briefly examined Mrs. Renner, asking her questions such as her name, address, marital status, number of children, and whether she was in Pizza Hut with appellant on the day in question. We find that the court did not abuse its discretion in calling Mrs. Renner as its own witness.

The third assignment of error is overruled.

## IV

Contrary to appellant's assertion, Mrs. Renner was permitted to testify as to why she could recall that appellant did not grab her around the neck or shoulder area:

"Q. Now, when you say you might not be able to recall if he touched you, if he grabbed you around the neck with his arm, would you be able to remember that?

"A. Definitely.

"Q. And that didn't happen?

"A. No.

"Q. Did he grab you around the shoulder area with his arm, either right or left?

"A. Not that I can remember, no.

"Q. Do you think if he had done that, you would -- that you would remember that?

"MS. ROGERS: Objection.

"MR. VERCILLO: Cross-examination, Judge.

"THE COURT: Overruled.

"A. If he slapped his arm across my shoulders?

"Q. Yeah, if he grabbed you around the shoulders.

"A. *No, No, if he had- did anything physically if he had, was grabbing me violently, I would have knowed it because I would have punched him.*

"Q. If he grabbed you like the kind of grab I'm talking about, what would your normal response to him --

"MS. ROGERS: Object, Judge. All the lines of questioning are calling for speculation as to what she might remember or she might or would do under certain circumstances. It's all calling for speculation.

"MR. VERCILLO: Again, Judge, it's cross-examination. I'm just asking the witness ques-

tions about what happened in the area where –

"THE COURT: Let's leave it at that. Not what speculatively she might have done.

"MR. VERCILLO: Well, that question, if I might be heard on it, is just because that's why she remembers that that didn't happen that way.

"THE COURT: *Well, you have it in the record. Sustained, however, on the last question. Let's move on to what really happened.*" T.247-248. (Emphasis added).

The witness was permitted to testify that she definitely would have remembered if he had grabbed her around the neck. She testified that if he had done anything like that, she would have punched him. The only question appellant was prohibited from asking was what her normal response to him would have been. As she had already testified that she would have punched him, this question had already been answered. The trial court did not err in sustaining the State's objection. The fourth assignment of error is overruled.

## V

It is within the trial court's discretion to refuse to admit testimony by an expert witness on an ultimate issue where such testimony is not essential to the jury's understanding of the issues and the jury is capable of making a correct decision without it. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, at syllabus 3. As Evid. R. 704 applies equally to expert and lay witnesses, we believe the trial judge has such discretion respecting testimony by a lay witness.

Mrs. Renner was permitted to testify that:

1. She did not feel threatened when she first saw the gun;

2. She was not afraid of appellant having the gun;

3. She was not frightened of appellant after he threatened to 'blow her head off';

4. She was not frightened of appellant when she went to the phone;

5. Appellant did not try to restrain her or stop her when she went to the car the first time;

6. Appellant did not prevent her from walking to the counter area, nor did he restrain her;

7. Appellant did not prevent her from going back to the booth;

8. Appellant did not hold her back from going to the car;

9. Appellant did not physically harm her at any time;

10. She was not afraid when appellant had the gun in the car;

11. She did not feel that she was being held in the car;

12. She felt free to move around to go where she wanted to go in Pizza Hut and the car;

13. She felt free to leave the car when the gun was pointed at her head.

Based on these statements, it is clear that the jury was capable of coming to a conclusion as to whether her liberty was restrained without having her state in so many words that her liberty was not restrained.

The trial court did not abuse its discretion in failing to allow such testimony.

The fifth assignment of error is overruled.

## VI

Appellant first alleges error in the trial court's failure to instruct the jury that they must make a finding that the firearm was operable. Appellant failed to object to the court's failure to so instruct. Appellant has therefore waived this issue. Crim. R. 30(A); *State v. Lane* (1976), 49 Ohio St.2d 77, 358 N.E.2d 1081, 1087, *vacated on other grounds,* (1978), 438 U.S. 911.[1]

Appellant urges us to extend *State v. Gaines* (1989), 46 Ohio St. 3d 65, 545 N.E. 2d 68 and *State v. Rice* (1990), 50 Ohio St. 3d 51, 552 N.E. 2d 630, to mandate an affirmative finding that a firearm was operable. We decline to do so. While these cases require the State to establish beyond a reasonable doubt that the gun was operable, they do not require such an affirmative finding.

The evidence was sufficient to establish beyond a reasonable doubt that the firearm was operable. The State may prove this fact by circumstantial evidence, such as testimony as to gun shots, bullets, or bullet holes. *Gaines, supra,* at 69. The gun discharged, there was a bullet hole through the seat of the car, two library books in the car had bullet holes, and the bullet was lodged in a third library book. This was abundant evidence from which the jury could have concluded beyond a reasonable doubt that the firearm was operable.

The sixth assignment of error is overruled.

For the foregoing reasons, the judgment of the Ashland County Common Pleas Court is affirmed.

SMART, J., and GWIN, J., concur.

---

[1] As we find that no affirmative finding that the firearm was operable was necessary under *Gaines* or *Rice,* the failure to give the instruction was not plain error.