JOURNAL ENTRY AND OPINION
Defendant Jeffrey Pritchard appeals from his convictions for aggravated murder, carrying a concealed weapon and having a weapon while under disability. For the reasons set forth below, we affirm.
On October 12, 1999, defendant and co-defendant Akim Dunlap were indicted pursuant to a five count indictment in connection with the September 23, 1999, shooting death of Anthony Walker. As is relevant herein, defendant Pritchard was charged with aggravated murder with a firearm specification, carrying a concealed weapon, and having a weapon while under disability. Defendant pleaded not guilty and the matter proceeded to a jury trial on February 28, 2000. After the jury was selected but prior to the presentation of evidence, Akim Dunlap entered a guilty plea to a charge of involuntary manslaughter and agreed to testify for the state. The state asked the court to declare a mistrial in order to seat a new panel of jurors but the trial court denied this motion.
The state's evidence demonstrated that Anthony Walker was shot twice and died of a bullet wound which penetrated his lungs and aorta. His left hand had gunshot residue, indicating that he had been shot from a distance of one inch to three feet. One nitrite particle was found on his jacket, demonstrating a muzzle to target distance of three feet or greater. Other nitrite particles suggested a distance of twelve to twenty inches. The victim's hands were negative for trace metal, however, and this tended to show that he had not handled a gun.
Akim Dunlap testified pursuant to his plea agreement and stated that on September 23, 1999, he left his girlfriend's house at around noon and proceeded to the store. Dunlap observed Anthony Walker in the area of East 40th Street and Woodland. He heard gunshots and three or four seconds later, he saw defendant and called out to him. According to Dunlap, defendant was wearing a yellow Auriex jacket and riding his bicycle. Dunlap observed defendant put his gun into his coat pocket and called out to him.
Dunlap also testified that on the previous day, his friend, and defendant's best friend, Ricardo, had been shot. Dunlap admitted that he did not speak to the police regarding this matter until after he was arrested. He also admitted that he had previously been convicted of drug trafficking.
On cross-examination, Dunlap acknowledged that he had also been convicted of carrying a concealed weapon and a second drug-related offense. He acknowledged that as originally indicted, he faced twenty-three years to life imprisonment, and by cooperating with the state, he now faced a possible three to ten year sentence, which could run concurrently with a parole violation case. Dunlap acknowledged that defendant did not visit Ricardo in the hospital and Dunlap denied telling Ricardo that he would get Walker for shooting him.
Dwight Harris testified that he discussed a pending drug case with the prosecuting attorney. In exchange for his testimony herein, he hoped to obtain a benefit in the drug case but he was not promised anything. Harris stated that Walker shot Ricardo and defendant threatened to get back at Walker. The next day, Harris was with defendant and Dunlap at the Longwood projects near Quincy and someone said that Walker was on the other side of the project. The group went after Walker and Dunlap confronted him with a .38 revolver. Walker fled around a building and defendant then approached from the other direction on a bicycle. Defendant then stopped, put one foot down, and shot Walker with his .40 caliber automatic gun. According to Harris, defendant was wearing a yellow Auriex coat and a bullet proof vest. Harris indicated that defendant fired three shots and Dunlap did not fire his weapon.
Harris testified that he made a statement to police on September 30, 1999. He was arrested on drug charges on October 5, 1999.
On cross-examination, Harris stated that Walker shot Ricardo because he believed that Harris, Ricardo and another man burglarized his home and pistol whipped him.
On re-direct examination, Harris verified portions of his statement to police and on re-cross examination, he acknowledged that he gave a statement to police after he was arrested on an unrelated matter. (Tr. 429).
Terrell Baines testified as a court's witness. He acknowledged that he had been arrested as a material witness in this matter and that he remained incarcerated prior to trial. Upon cross-examination he admitted that he had given police a statement in which he noted that defendant discussed the attack on Ricardo and showed Baines a bulletproof vest that he had on under his jacket. He further acknowledged that in the statement he indicated that the men later learned that Walker was in the area and they went after him. Finally, he acknowledged that he told police that Dunlap confronted Walker and drew a weapon and that he saw defendant shoot Walker. He testified, however, that the police insisted that he was present and he gave the statement because he was afraid that he would be charged with the shooting.
Cleveland Police Detective Michael Beaman testified that he took statements from Baines and Harris and that the statements contain the narratives provided by the witnesses. He admitted on cross-examination that Baines was arrested on traffic warrants then held for questioning in this matter. Det. Beaman denied telling Baines that he could get into trouble if he did not provide information.
Malcomb Stephens testified that he had been friends with Walker since childhood. Between noon and 1:00 p.m., on September 23, 1999, he was a passenger in a car driven by Lacie Phillips. While stopped at a traffic light at East 40th and Outwaite, Stephens saw Walker with another friend and saw defendant riding a bicycle in the opposite direction. According to Stephens, defendant stopped in front of Walker and fired three shots. Walker fell and defendant rode away. Stephens and Phillips stopped and Phillips, a nurse, began to administer first aid. They spoke to CMHA police then waited for Cleveland police to arrive. Stephens then gave a statement to Cleveland Police Detective Hasan and told him that defendant was responsible for the shooting. Stephens also picked defendant from a photo array.
Det. Sahir Hasan testified that he responded to the scene and prepared the original investigative report of this matter. Stephens was at the scene and Hasan interviewed him. Shell casings were recovered at the scene and matched the bullet recovered from Walker.
Defendant was subsequently convicted of each of the charges and was sentenced to twenty years to life incarceration for aggravated murder, three years for the firearm specification and one year terms for the remaining charges. Defendant now appeals and assigns six errors for our review.
Defendant's first assignments of error states:
 THE TRIAL COURT ABUSED ITS DISCRETION BY PERMITTING THE PROSECUTING ATTORNEY TO REHABILITATE HIS OWN WITNESS THROUGH THE USE OF A POLICE STATEMENT AND BY ADMITTING THE HEARSAY STATEMENT AS SUBSTANTIVE EVIDENCE.
Within this assignment of error, defendant asserts that the trial court erred in permitting the state to use Dwight Harris's police statement during its redirect examination. Defendant maintains that his trial attorney did not effectively impeach Harris in a manner which would have supported introduction of his police statement on redirect. He further maintains that the statement was hearsay and therefore wrongly introduced.
Evid.R. 801(D)(1)(b) provides:
 (D) Statements which are not hearsay. A statement is not hearsay if:
 (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * *
 (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence of motive, * * *
(Emphasis added).
Pursuant to this rule, a declarant's prior consistent statement is not hearsay if (1) the declarant testifies at trial and is subject to cross-examination, (2) the statement is consistent with her prior testimony, and (3) it is offered to rebut an express or implied charge of recent fabrication. See State v. Nichols (1993), 85 Ohio App.3d 65, 70; State v. Smith (1986), 34 Ohio App.3d 180, 191. In Motorists Mut. Ins. Co. v. Vance (1985), 21 Ohio App.3d 205, 207, the court explained this rule as:
 "Because the result of exclusion of prior consistent statements, where they are sought to be used for rebuttal purposes, would be to permit an implication of fabrication or falsification to stand without challenge, their admission should be favored to the extent that a generous view should be taken of the entire trial setting in order to determine if there was sufficient impeachment of the witness to amount to a charge of fabrication or improper influence or motivation."
Further, a statement admitted pursuant to this rule may be used as substantive evidence. See Evid.R. 801(D)(1)(b), Staff Notes.
In this instance, defendant's trial attorney stated during his cross-examination of Harris as follows:
 I'm going to show you this here statement marked as State's Exhibit 15. I'm going to read this to you, okay?
(Tr. 392). Defendant's trial counsel then asked Harris a series of questions to elicit, essentially, whether he really observed the shooting and to also elicit from Harris that he had been locked up with the decedent's brother. On re-direct, the state questioned Harris regarding some of his assertions in his statement and defendant's trial counsel did not object. Thereafter, on re-cross, defendant's trial counsel elicited from Harris that he had made his statement after he was arrested on an unrelated matter. (Tr. 429). From the foregoing, we conclude that defendant's trial counsel impliedly charged that Harris had no personal knowledge of the events when they occurred and impliedly charged Harris with fabricating an account for trial. Further, on re-cross, defendant's trial counsel impliedly charged him with creating an account due to an improper influence or motive. Accordingly, we find that the statement was properly admitted pursuant to Evid.R. 801(D)(1)(b). Moreover, the statement was substantive evidence pursuant to the notes accompanying the rule.
This assignment of error is without merit.
Defendant's second assignment of error states:
 THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING AS SUBSTANTIVE EVIDENCE THE POLICE STATEMENT OF AKIM DUNLAP.
Herein, defendant asserts that the trial court erred in admitting into evidence the police statement of Akim Dunlap.
As noted previously, pursuant to Evid.R. 801(D)(1)(b) a declarant's prior consistent statement is not hearsay if (1) the declarant testifies at trial and is subject to cross-examination, (2) the statement is consistent with his prior testimony, and (3) it is offered to rebut an express or implied charge of recent fabrication. See State v. Nichols, supra. Such statements may be used as substantive evidence. See Evid.R. 801(D)(1)(a), Staff Notes.
Herein, defendant's trial counsel questioned Dunlap regarding cooperating with the state, his potential sentence had been considerably shortened. He was therefore charged, essentially, with having an improper influence or motive to testify and the consistent statement was therefore admissible pursuant to Evid.R. 801(D)(1)(b).
This assignment of error is without merit.
Defendant's third assignment of error states:
 THE TRIAL COURT ABUSED ITS DISCRETION IN DECLARING TERRELL BAINES A COURT WITNESS AND IN PERMITTING CROSS-EXAMINATION BY THE STATE NOT AUTHORIZED BY EVIDENCE RULE 614 AND IN FAILING TO GIVE AN INSTRUCTION LIMITING THE USE OF IMPEACHMENT EVIDENCE.
Defendant next asserts that the trial court erred in declaring Terrell Baines a court witness. He further asserts that the state was then erroneously permitted to impeach Baines with his prior inconsistent statement because the state did not demonstrate surprise or affirmative damage, the statement elicited hearsay, and the trial court did not instruct the jury that the statement was impeachment but not substantive evidence.
In State v. Adams (1980), 62 Ohio St.2d 151, paragraph four of the syllabus, the Supreme Court held that "a trial court possesses the authority in the exercise of sound discretion to call individuals as witnesses of the court." This is in accord with the fundamental duty of the court to arrive at the truth. See Evid.R. 614(A), Staff Notes.
Further, Evid.R. 614(A) provides:
 "The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."
On review of such action, we must determine whether the trial court abused its discretion. State v. Apanovitch (1987), 33 Ohio St.3d 19,22. Abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Id.
Moreover, pursuant to Evid.R. 614, the state need not demonstrate surprise in order to cross-examine such a witness. Id.; State v. Dacons (1982), 5 Ohio App.3d 112. However, when such witness is impeached with his prior statement, the inconsistent statement should be used only for impeachment and a limiting instruction given. Id., at 115. See Evid.R. 613(A).
In this instance, the record demonstrates that the state informed the court that Baines had not responded to its attempts to contact him in this matter and that Baines's mother stated that he would not appear for trial. Thereafter, on February 22, 2000, the trial court declared Baines to be a material witness. He was arrested and held in jail in order to secure his trial testimony. (Tr. 433).
Later, as trial was under way, the attorneys for defendant informed the court that Baines had denied the information contained within his statement to the police. Defendant's trial attorneys stated that they were informing the state of the change of events in order that the state would not later assert that it was surprised by the events or that Baines was now a hostile witness. In response, the state indicated that on the previous day, Baines spoke with a representative of the Cleveland Police and had not changed his account of the events which he observed.
From the foregoing, the trial court did not abuse its discretion in declaring Baines to be a court's witness. Further, in light of the fact that Baines became a court's witness, the state was permitted to impeach him with his prior inconsistent statement. State v. Dacons, supra. Baines' written statement was admissible only for impeachment and not for substantive evidence, Evid.R. 613(A), Staff Notes, but we are unable to conclude that the failure of the trial court to so instruct the jury constituted plain error which affected defendant's substantial rights. Crim.R.52(B).
This assignment of error is without merit.
Defendant's fourth assignment of error states:
 APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, GUARANTEED BY THE UNITED STATES CONSTITUTION, AMENDMENTS VI AND XIV, AND OHIO CONSTITUTION, ARTICLE I, SECTION 10, DUE TO A CONSTITUTIONALLY DEFICIENT PERFORMANCE BY HIS ATTORNEYS RESULTING IN PREJUDICE.
Defendant next asserts that his trial counsel was ineffective in connection with: (1) the admission of Harris's statement; (2) the admission of Baines's statement; (3) the introduction of evidence that defendant's friend Ricardo was shot by Walker and that defendant stated that he would avenge this shooting; (4) the state's assertion that the defense had not proven its claim of alibi; and (5) permitting introduction of evidence that Malcomb Stephens was frightened by the boldness of the killing.[1]
In order to establish a claim of ineffective assistance of trial counsel, it is clear that a defendant must make a two-part showing:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington (1986), 466 U.S. 668, 687. Accord State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. The Strickland court also cautioned courts examining the issue that:
 [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134(1982). * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'
Id., at 689. See, also, State v. Frazier (1991), 61 Ohio St.3d 247,253.
In this instance, we have rejected the underlying claims of error raised within the first, second and fourth areas of allegedly deficient performance. See supra, and infra. (Assignments of error one, two, three and five). Accordingly, since the underlying claims of error have failed, the claims of ineffective performance predicated upon these claims must likewise fail. See State v. Henderson(1988) 39 Ohio St.3d 24,33; State v. Holloway (1988), 38 Ohio St.3d 239, 244.
As to the third claim regarding the introduction of evidence that defendant's friend Ricardo was shot by Walker and that defendant stated that he would avenge this shooting, this situation was addressed in State v. Davis (1991), 62 Ohio St.3d 326, 343. The Davis Court stated:
 Kendall testified that he overheard a conversation between Krebs and Piazza regarding their arrest. Kendall testified that Krebs told him that Piazza set him up and that he (Krebs) was going to get even.
 Both of these statements were properly admitted by the trial court. The statement by Krebs to the effect that Piazza set him up does not constitute hearsay inasmuch as it was not admitted for the truth of the matter contained therein. The statement was not offered for the purpose of establishing that Piazza did, in fact, subject Krebs to criminal liability. Whether Piazza did or did not engage in this conduct is wholly irrelevant to the issues involved in the present case. Rather, the crucial inquiry is whether Krebs believed that Piazza had acted to implicate him for engaging in criminal activity.
 The statement therefore serves to establish the motive of Krebs to contract for the death of Piazza.
 With respect to the statement of Krebs communicated to Kendall that he would, in essence, get even with Piazza, such evidence is hearsay. However, it constitutes admissible hearsay pursuant to Evid.R. 803(3) inasmuch as it reflects the then-existing state of mind of the declarant.
 Accordingly, the ninth proposition of law advanced by appellant is overruled.
By application of the foregoing, testimony that Ricardo thought that Walker shot him was not hearsay since it was not offered for its truth but only to show the background for other events. Further, defendant's subsequent statement regarding getting even were admissions of a party and not hearsay. Evid.R. 801(D)(2). Accordingly, we therefore reject this claim of ineffective assistance of counsel.
As to the fifth area of allegedly deficient performance, i.e., that Malcomb Stephens was afraid, we note, as an initial matter, that counsel was successful in having the court strike Stephen's earlier remark that he was afraid because of possible retaliation. In any event, it is obvious that a witness to a shooting would be afraid and counsel did not commit an unprofessional error in failing to preclude introduction of this evidence.
This assignment of error is without merit.
Defendant's fifth assignment of error states:
 PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT RESULTED IN THE DENIAL OF A FAIR TRIAL TO APPELLANT.
Herein, defendant maintains that the prosecuting attorney committed misconduct in remarking during closing argument that the defendant had not kept his promise of demonstrating his alibi at the time of the offense.
A prosecutor is afforded wide latitude in closing arguments, State v. Jacks (1989), 63 Ohio App.3d 200, 210, and it is within the trial court's sound discretion to determine if a prosecutor has gone beyond the bounds permitted. State v. Benge (1996), 75 Ohio St.3d 136 . The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13, 14. Closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. State v. Mann (1993),93 Ohio App.3d 301, 312.
It is long-standing precedent that the state may comment upon a defendant's failure to offer evidence in support of its case. State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193; State v. Williams (1986),23 Ohio St.3d 16, 20. The state may therefore challenge the weight of the evidence offered in support of an exculpatory theory presented by the defense, see State v. Watson (1991), 61 Ohio St.3d 1, 9, so long as the state does not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent. State v. Collins (2000), 89 Ohio St.3d 524, 528.
In this instance, the challenged remarks focused solely upon the weight of the evidence offered in support of the defendant's exculpatory theory of alibi, did not imply that the burden had shifted to the defense, and did not constitute a comment upon the defendant's failure to testify.
Further, in State v. Dixon (March 13, 1997), Cuyahoga App. No. 68338, unreported, this court determined that similar remarks were directed to the strength of the state's case rather than an improper comment on the failure of defendant-appellant's failure to call a witness.
Finally, the jury was instructed that defendant's failure to testify could not be considered for any purpose. (Tr. 697).
This assignment of error is without merit.
Defendant's sixth assignment of error states:
 THE VERDICT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant next complains that his convictions are supported by insufficient evidence and are against the manifest weight of the evidence.
 A. SUFFICIENCY
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Supreme Court stated:
 `Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim. R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is legally insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
In State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, the Court described the role of the appellate court in reviewing a challenge to the sufficiency of the evidence supporting a conviction:
 An appellate court's function when reviewing the sufficiency of evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Id., at paragraph two of the syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 520.
In this instance, the state presented evidence that defendant discussed getting back at Anthony Walker following the shooting of Ricardo, that he wore a bulletproof vest and also had a handgun. The state also presented evidence that defendant learned that Anthony Walker was nearby and went after him then shot him. Finally, the state presented evidence that defendant was under disability at the time of the shooting due to a prior conviction for attempted trafficking in drugs. Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
This portion of the assigned error is without merit.
 B. MANIFEST WEIGHT
In State v. Thompkins (1997), 78 Ohio St.3d 380, 387, the Supreme Court set forth the role of an appellate court in determining whether a judgment is against the manifest weight of the evidence:
 When a court of appeals reverses the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.
 Tibbs [v. Florida (1982), 457 U.S. 31,] at 42, 102 S.Ct at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 (The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should only be granted in the exceptional case in which the evidence weighs heavily against the conviction.)
Moreover, the credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
As we have noted previously, the state presented evidence that defendant discussed getting back at Walker following the shooting of Ricardo, that he wore a bulletproof vest and had a gun, that he went after Walker after learning his location, and that he shot Walker. Defendant did not present any evidence. From the foregoing, we are unable to conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
This portion of the assigned error is without merit.
The sixth assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., AND PATRICIA A. BLACKMON, J., CONCUR.
 ___________________________ JOHN T. PATTON,* JUDGE:
* Sitting By Assignment: Judge John T. Patton, Retired, of the Eighth District Court of Appeals.
[1] Defendant alleges ten areas of deficient performance, but we have combined all interrelated allegations to arrive at five general areas of allegedly deficient performance.