[Cite as *State v. Sutphin*, 2011-Ohio-5157.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   96015

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHRISTOPHER SUTPHIN

DEFENDANT-APPELLANT

**JUDGMENT:
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-536741

**BEFORE:**   Boyle, P.J., S. Gallagher, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   October 6, 2011

**ATTORNEY FOR APPELLANT**

Timothy F. Sweeney
Law Office of Timothy Farrell Sweeney
The 820 Building, Suite 430
820 West Superior Avenue
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Katherine Mullin
        Daniel T.   Van
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, P.J.:

{¶ 1}  Defendant-appellant, Christopher Sutphin, appeals his convictions for domestic violence and felonious assault.   He raises five assignments of error for our review:

{¶ 2}  "[1.] The trial court committed reversible error, and denied Sutphin due process and a fair trial, when it allowed the state to call the complaining witness as the 'court's witness.'

{¶ 3} "[2.] The trial court committed reversible error, and denied Sutphin due process and a fair trial, when it admitted hearsay evidence.

{¶ 4} "[3.] Christopher Sutphin's convictions in this case are based on evidence that is insufficient as a matter of law, in violation of Sutphin's rights to due process and a fair trial as guaranteed by Article I, Sections 10 and 16 of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution.

{¶ 5} "[4.] Christopher Sutphin's convictions in this case are against the manifest weight of the evidence.

{¶ 6} "[5.] Sutphin's convictions for felonious assault and domestic violence should have been merged into a single conviction on only one of the offenses to be selected by the state. The court's failure to do so violated Ohio merger law, Sutphin's right to due process, and his double jeopardy right against cumulative punishments for the same offense, and is plain error."

{¶ 7} We find merit to Sutphin's fifth assignment of error, and reverse and remand for resentencing.

Procedural History and Factual Background

{¶ 8} The grand jury indicted Sutphin on Count 1, felonious assault, in violation of R.C. 2903.11(A)(1), and Count 2, domestic violence, in violation of R.C. 2919.25(A), with a furthermore clause that Sutphin had previously been convicted of domestic violence. Sutphin was subsequently indicted on another count of domestic violence

against the same victim for events that allegedly occurred nine days after the first incident. The two cases were consolidated, and the subsequently indicted count became Count 3 for purposes of trial.

{¶ 9} Dr. Matthew Lashutka testified that he was working in the emergency room at Fairview Hospital on April 9, 2010 when Darlene Driscoll came to the hospital. Dr. Lashutka explained that Driscoll had told him that her boyfriend had kicked her in the ribs and she was complaining of pain in her left ribs. He took x-rays of her chest and ribs and determined that her seventh rib was fractured, and possibly her eighth and ninth ribs were also fractured. He testified that he asked Driscoll if she wanted to talk to a social worker or go to a domestic violence shelter, but she declined. Driscoll told Dr. Lashutka that she had already made a police report and did not need any further services. Dr. Lashutka further testified that although Driscoll "smelled of alcohol," she did not appear to be "grossly intoxicated." Driscoll "seemed like she was very with it and clear with her thoughts."

{¶ 10} Officer Gerald Shipp testified that on April 9, 2010, he responded to a call of a "male and female fighting." When he got there, he heard a woman "yelling and screaming and crying." He reached the door, which was open, and he saw Driscoll lying on the floor, holding her side, "crying and screaming." Sutphin was also in the apartment, and Driscoll told Officer Shipp, "he did this to me, he did this to me." After Officer Shipp separated the parties, Driscoll told him that she had been "out drinking or

something, and [Sutphin] didn't want to let her in, so when he finally opened the door he grabbed her by the hair, pulling her down to the floor, and then kicked her in her side."

{¶ 11} Officer Shipp testified that he and his partner arrested Sutphin. He explained that Sutphin had "a busted lip." Sutphin told Officer Shipp that he did not do anything to Driscoll, but said that Driscoll hit him. He said that Sutphin was very upset, and threatened Officer Shipp and his partner. Driscoll also said, "well, I didn't do anything this time, but the next time I'm gonna beat her ass or I'm going to do it for real."

{¶ 12} Officer Shipp testified on cross-examination that Driscoll was intoxicated and had a very strong odor of alcohol emanating from her. He said that Driscoll could not stand up, her speech was slurred, and she was screaming.

{¶ 13} Detective Andrew Harasimchuk was assigned to the case on April 10, 2010. He explained that he called Driscoll and asked her if she wanted to pursue criminal charges against Sutphin, and she said that she did not.

{¶ 14} Detective Harasimchuk testified that Sutphin told him that he and Driscoll had been drinking all day and that they were both highly intoxicated. They got into an argument and Sutphin locked Driscoll out of the apartment. When he finally let her back in, she was very angry and began throwing "household objects" at him. One of the objects hit Sutphin in the chin, which Detective Harasimchuk said that he observed an injury to Sutphin's chin. Sutphin told Detective Harasimchuk that Driscoll was walking around, very drunk, and she fell into the sink, causing her injuries. Sutphin said that he

went to help her, but she was screaming, so he called the police. Detective Harasimchuk also testified that Sutphin had previously been convicted of domestic violence in 1993.

{¶ 15} Officer Richard Greco testified that on April 18, 2010, he responded to a call of "female victim of assault" at Driscoll's and Sutphin's home. When he got there, Driscoll told him that "she had just been assaulted by her live-in boyfriend ***; that he hit her, he grabbed her and held her and told her that if she called the police he was going to beat her *** ass[.]" Officer Greco said that Driscoll was intoxicated, crying, and upset. Driscoll told him that Sutphin had just gotten out of jail for breaking her ribs and she wanted him to go back to jail. He did not observe any injuries on Driscoll at that time.

{¶ 16} Driscoll testified that she has a birth defect in her back; her "fifth lumbars are missing." She has "six pins, two rods, [and] a spinal cord stimulator in [her] back." She stated that Sutphin was still her boyfriend as of the date of trial. She agreed that she told police officers that Sutphin kicked her, but she said she only did so because she was angry. She said she lied to police and to the emergency room doctor because she was angry at Sutphin.

{¶ 17} Driscoll testified that due to the issues with her back, she falls a lot because her "legs give out." She said that she is supposed to walk with a cane, but she is too embarrassed to do so. She testified that she regularly takes Neurotin, Valium, Zoloft, Lexapro, and Singulair, but she also takes a variety of other medications as needed. She

stated that she is not supposed to drink alcohol because it makes her "fall down" and makes her "stupid."

{¶ 18} Driscoll stated that on April 9, she drank two bottles of Wild Irish Rose before the police came. She said it caused her to get an "attitude problem." She explained that she was "out of control," throwing things at Sutphin, and Sutphin called 911. She further testified that Sutphin did not kick her. She said her legs gave out and she fell into a metal counter in the kitchen.

{¶ 19} Driscoll further denied that Sutphin did anything to her on April 18, 2010. She explained that she lied to police that time also.

{¶ 20} The jury found Sutphin guilty of the first two counts, resulting from the events of April 9, 2010, but found him not guilty of the third count, relating to the events of April 18, 2010. The trial court sentenced Sutphin to two years in prison; two years on Count 1 and six months on Count 2, to run concurrent to each other. The trial court further notified Sutphin that he would be subject to three years of mandatory postrelease control upon his release from prison.

Evid.R. 614 — Court Witness

{¶ 21} In his first assignment of error, Sutphin contends that the trial court erred when it granted the state's request to call Driscoll as a court witness. Prior to trial, the state became aware that Driscoll recanted her original statements to police, and requested the court to call her as a court witness. Sutphin contends that the state did so to

circumvent the impact of Evid.R. 607, which mandates that prior inconsistent statements are only admissible for impeachment purposes. Sutphin argues that the action of the trial court in making Driscoll its witness permitted the state to do precisely what Evid.R. 607 prohibits the state from doing in the absence of surprise.

{¶ 22} Evid.R. 614(A) provides that "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."

{¶ 23} In *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, 939 N.E.2d 218, ¶44, the Second Appellate District explained:

{¶ 24} "'A trial court possesses the authority in the exercise of sound discretion to call individuals as witnesses of the court.' *State v. Adams* (1980), 62 Ohio St.2d 151, 404 N.E.2d 144, paragraph four of the syllabus. 'It is well-established that a trial court does not abuse its discretion in calling a witness as a court's witness when the witness's testimony would be beneficial to ascertaining the truth of the matter and there is some indication that the witness's trial testimony will contradict a prior statement made to police.' *State v. Schultz*, 11th Dist. No. 2003-L-156, 2005-Ohio-345, ¶29; *State v. Lather*, 171 Ohio App.3d 708, 2007-Ohio-2399, 872 N.E.2d 991, ¶3."

{¶ 25} Further, "Evid.R. 607 is consistent with the prior common-law rule of [*Adams*, 62 Ohio St.2d 151], insofar as it permits the trial court to call, as its witness, a witness whom the state requests the trial court to call, and the state may impeach said

witness with prior inconsistent statements even though the state cannot demonstrate surprise." *State v. Dacons* (1982), 5 Ohio App.3d 112, 449 N.E.2d 507, syllabus. "The Ohio Rules of Evidence, and in particular Evid.R. 607 and 614, codify the common-law evidentiary rules applicable in Ohio prior to the adoption of the Rules of Evidence as pertinent to this case." Id. at 114.

{¶ 26} "In *State v. Adams*, upon request of the state, a witness was called as the court's witness because she had made statements in the past that were inconsistent and would be inconsistent with her expected trial testimony. The witness was called by the court who asked a short series of non-leading questions and then permitted both prosecution and defense the opportunity to cross-examine. The Supreme Court held that, under Ohio common-law rules of evidence, the prosecution, had it called the witness, would have been deemed to have vouched for her credibility and could not thereafter have impeached her. The court stated that the trial court had the power under common-law evidentiary rules to call witnesses in the exercise of sound discretion. The court rejected the argument of the defense that it would be unfair to permit the prosecution to gain the right to impeach the witness and to be able to ask leading questions of the witness. The Supreme Court found no abuse of discretion, as there was justification in that the witness' testimony would be beneficial to the jury in performing its fact-finding responsibilities." Id.

{¶ 27} This court has also followed *Adams* and held that a trial court does not err when it calls a witness as the "court's witness" — including an alleged domestic violence victim who recanted her original statements to police and doctors of physical abuse she endured by her boyfriend. See *State v. Beasley*, 8th Dist. No. 88989, 2007-Ohio-5432. In *Beasley*, we explained:

{¶ 28} "[T]he court properly identified the victim as a court's witness. At the time of trial, the victim was married to appellant and pregnant with his child. She informed the doctor at the hospital that her boyfriend was her attacker. She made a statement to the police on April 28, 2006, in which she identified her boyfriend as her attacker. On August 16, 2006, the victim wrote the judge a letter in which she recanted the entire story (making it clear that her testimony would conflict with her previous statement). At trial, she recanted her story, telling the court that someone else had assaulted her, and she indicated that her mother (who disliked appellant) had made her file a police report. Because the victim was properly identified as a court's witness, the prosecutor was permitted to impeach her." Id. at ¶50.

{¶ 29} In the present case, the state moved to call Driscoll as the court's witness because it expected Driscoll to testify contrary to what she previously told police and emergency room doctors. Driscoll was an important eyewitness whose testimony could reasonably be found to be necessary to aid the jury in responsibly carrying out its fact-finding function. The reason the state requested the court to call Driscoll as a

witness, rather than calling her as a witness itself, was to avoid being unable to test the credibility of her testimony by her prior out-of-court statements, just as in *Adams* and *Beasley.*

{¶ 30} We find nothing unreasonable, arbitrary, or unconscionable about the trial court's decision to call Driscoll as a court's witness. Driscoll's testimony was essential to determining the truth of the charges against Sutphin. The state and defense counsel, as well as the court, were aware that Driscoll had recanted her original statements that she made to police. In these circumstances, a trial court is justified in calling the witness as a court's witness in order to allow the prosecution an opportunity to cross-examine the witness about her prior inconsistent statements.

{¶ 31} Accordingly, we find no error on the part of the trial court. Sutphin's first assignment of error is overruled.

## Hearsay Evidence

{¶ 32} In his second assignment of error, Sutphin argues that the trial court erred when it permitted the state to elicit testimony from Officer Shipp and Dr. Lashutka that amounted to inadmissible hearsay.

{¶ 33} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343. Absent an abuse of that discretion and a showing of material prejudice, an appellate court will not overturn a trial court's ruling. *State v. Martin* (1985), 19 Ohio St.3d 122, 129,

483 N.E.2d 1157.   The abuse-of-discretion standard is defined as "grossly unsound, unreasonable, illegal, or unsupported by the evidence."   *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶18, quoting Black's Law Dictionary (8th Ed.2004) 11.

**{¶ 34}** First Sutphin argues that Officer Shipp's testimony regarding what Driscoll told him when he arrived at the scene (that Sutphin dragged her across the floor and kicked her in the left side of her body) was inadmissible hearsay.   We disagree.

**{¶ 35}** Evid.R. 803(2) defines an "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."   Excited utterances are deemed reliable because, by their nature, they do not entail an opportunity for the declarant to reflect and fabricate or to distort the truth.   *State v. Wallace* (1988), 37 Ohio St.3d 87, 88, 524 N.E.2d 466.

**{¶ 36}** For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) the event must be startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while the declarant was still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event.   *State v. Taylor* (1993), 66 Ohio St.3d 295, 300-301, 612 N.E.2d 316.   In analyzing whether a statement is an excited utterance, the Ohio Supreme Court noted that, "[t]he controlling factor is whether the declaration was made under such circumstances as would reasonably

show that it resulted from impulse rather than reason and reflection." *State v. Humphries* (1992), 79 Ohio App.3d 589, 598, 607 N.E.2d 921.

{¶ 37} Sutphin claims that the confrontation between he and Driscoll "had ended some time before the police arrived, and at least several minutes or more had elapsed before Driscoll made her statement." We disagree with Sutphin's interpretation of the facts. When Officer Shipp arrived at the scene, Driscoll was lying on the floor, screaming and crying, and obviously in pain from at least one fractured rib — if not more — when she told police what happened. Officer Shipp testified that Driscoll told him this as soon as he saw her lying on the floor. We therefore find that the statements come in under the excited utterance exception to the hearsay rule.

{¶ 38} Next, Sutphin contends that Dr. Lashutka's testimony regarding what Driscoll told him at the hospital, that is, that her boyfriend had kicked her in her left side, was inadmissible hearsay. But we find that these statements were admissible under Evid.R. 803(4). This rule provides: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Driscoll's statements were made to an emergency room doctor for purposes of medical diagnoses or treatment.

{¶ 39} Thus, Sutphin's second assignment of error is overruled.

<u>Sufficiency and Manifest Weight of the Evidence</u>

**{¶ 40}** In his third and fourth assignments of error, Sutphin contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Since he raises the same argument for both standards, we will address them together.

**{¶ 41}** When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶77, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**{¶ 42}** In reviewing a claim challenging the manifest weight of the evidence, "[t]he question to be answered is whether there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal quotes and citations omitted.) *Leonard* at ¶81.

**{¶ 43}** To prove beyond a reasonable doubt that Sutphin was guilty of felonious assault and domestic violence, the state had to present sufficient evidence that Sutphin

knowingly caused serious physical harm to Driscoll (felonious assault and domestic violence), or attempted to cause physical harm to Driscoll (domestic violence). See R.C. 2903.11(A)(1) and 2919.25(A). The state further had to establish that Driscoll and Sutphin lived together for purposes of proving domestic violence under R.C. 2919.25(A).

{¶ 44} Sutphin argues that there was no evidence that he committed felonious assault or domestic violence against Driscoll because the only evidence submitted by the state that he did so was Officer Shipp's and Dr. Lashutka's testimony, which he contends was inadmissible hearsay. But we already determined that their testimony could be admitted under exceptions to the hearsay rule. And based on their testimony, the state certainly presented sufficient evidence that Sutphin committed felonious assault and domestic violence.

{¶ 45} Sutphin further argues that Driscoll's statements to the police and the emergency room doctor were "inherently suspect" because of her "extreme drunkenness" and the fact that soon after she made the statements, she recanted them. We disagree. Even if Driscoll was intoxicated when she told Officer Shipp that Sutphin had kicked her in her side, Officer Shipp did not testify that Driscoll was so intoxicated that she could not relay what happened to her. And Dr. Lashutka testified that although Driscoll smelled of alcohol, she "seemed like she was very with it and clear with her thoughts."

{¶ 46} Thus, after reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses and determining whether in

resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered, we find that the jury did not lose its way. See *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Indeed, the verdict indicates that the jury carefully considered all of the evidence since it found Sutphin not guilty of domestic violence on April 18, 2010.

{¶ 47} Accordingly, Sutphin's third and fourth assignments of error are overruled.

Allied Offenses

{¶ 48} In his fifth assignment of error, Sutphin contends that it was plain error for the trial court not to merge his felonious assault and domestic violence convictions. We agree.

{¶ 49} We review the issue of whether two offenses are allied under a de novo standard of review. See *State v. Young*, 2d Dist. No. 23438, 2010-Ohio-5157.

{¶ 50} "The double jeopardy clauses of both the United States and Ohio Constitutions protect 'an individual against successive punishments as well as successive prosecutions for the same offense.' *State v. Moore* (1996), 110 Ohio App.3d 649, 652, 675 N.E.2d 13 (citations omitted). 'Ohio's allied offenses statute, R.C. 2941.25, protects against multiple punishments for the same criminal conduct in violation of the Double Jeopardy Clauses of the United States and Ohio Constitutions.' Id. at 653, 675 N.E.2d 13." *State v. Lowery*, 11th Dist. No. 2007-T-0085, 2008-Ohio-1896, ¶11. In

the committee comment to R.C. 2941.25, the drafters explained that "the basic thrust of the section is to prevent 'shotgun' convictions."

{¶ 51} R.C. 2941.25 provides:

{¶ 52} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 53} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 54} In the recent Ohio Supreme Court case, *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the court thoroughly reviewed its "difficult *** jurisprudence on allied offenses" from 1971 to the present. See id. at ¶7 - 40. But most notably, in *Johnson*, the Supreme Court finally overruled *State v. Rance,* 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, where it had held that courts should compare the statutory elements in the abstract. *Johnson* at paragraph one of the syllabus. The Supreme Court explained that *Rance* had ignored the mandates of R.C. 2941.25, "which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct." *Johnson* at ¶46.

{¶ 55} In *Johnson*, the Supreme Court explained that "whether offenses are allied offenses of similar import under R.C. 2941.25(A) *** is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. *** If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." (Internal citations omitted.) Id at ¶48.

{¶ 56} Then, "[i]f the multiple offenses *can be* committed by the same conduct, then the court must determine whether the offenses *were* committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" Id. at ¶49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶50 (Lanzinger, J., dissenting).

{¶ 57} "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." Id. at ¶50.

{¶ 58} "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." Id. at ¶51.

{¶ 59} The offense of felonious assault under R.C. 2903.11(A)(1) requires proof that the defendant knowingly caused serious physical harm. Domestic violence under

R.C. 2919.25(A) requires proof that the defendant knowingly caused physical harm to a family or household member. We conclude that it is possible to commit the offenses of felonious assault and domestic violence with the same conduct. *Johnson* at ¶48. Because we answer the first inquiry in the affirmative, we must next examine whether appellant in fact committed the offenses by way of a single act, performed with a single state of mind. Id. at ¶49.

{¶ 60} Here, the state relied upon the same conduct to support Sutphin's convictions for felonious assault and domestic violence. In its opening statement, the state informed jurors that Sutphin committed two acts of violence, one on April 9 — where he broke Driscoll's ribs — and one on April 18 (of which he was found not guilty). Again, in its closing argument, regarding *both* offenses, domestic violence and felonious assault, the state argued only that Sutphin kicked Driscoll, breaking her ribs.

{¶ 61} Although the state now argues to this court that dragging Driscoll across the floor by her hair amounted to attempted physical harm and supports a separate animus from kicking Sutphin, that was not its theory below. We therefore are "compelled to view the record as it stands in revisiting the issue." See *State v. Craycraft*, 12th Dist. Nos. CA2009-02-013 and CA2009-02-014, 2011-Ohio-413, ¶19 (when state relied on same conduct to prove both offenses at trial, then it cannot change its theory on appeal).

{¶ 62} Consequently, under the record before us, felonious assault and domestic violence are allied offenses of similar import and must be merged. Thus, the trial court

committed plain error by not merging the offenses. Upon remand, the state retains the right to elect which allied offense to pursue at sentencing following a remand to the trial court. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶20, 24.

**{¶ 63}** Sutphin's fifth assignment of error is sustained.

**{¶ 64}** Judgment affirmed in part, reversed in part, and remanded for resentencing so the state can elect which offense to pursue after merger, felonious assault or domestic violence.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
EILEEN A. GALLAGHER, J., CONCUR