[Cite as *State v. Mack*, 2015-Ohio-5214.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-A-0019** |
| JASON PERRY MACK, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court, Western District, Case No. 2014 CRB00871W.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Aaron T. Baker*, 38109 Euclid Avenue, Willoughby, Ohio 44094 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Jason Perry Mack, timely appeals his conviction for domestic violence that arose from an altercation with his wife, Georgina Garcia. Garcia advised the investigating officer that Mack pushed her into the wall causing a hole in the drywall, but she later recanted her story.

{¶2} Mack argues on appeal that the trial court erred in failing to grant an acquittal, that his conviction was not supported by sufficient evidence, that his

conviction was against the manifest weight of the evidence, that the trial court committed plain error in accepting Garcia's hearsay statements as substantive evidence, and that his trial counsel's performance was ineffective and prejudicial. For the following reasons, however, Mack's assignments of error lack merit and are overruled.

{¶3} Appellant's case was heard via bench trial on January 14, 2015. Officer Roger Wilt from the Geneva City Police Department testified for the state. He was dispatched in response to a 911 call reporting a domestic situation. Mack's daughter Haley had called for help, but she was not present when the officers arrived. She did not testify.

{¶4} Wilt testified that Garcia answered the door stating, "thank God, it's the police. Do you see the red mark on my face?" Then, in order to separate Garcia and Mack, Wilt interviewed Garcia inside the residence while Mack went outside with Officer Gonzalez. Wilt noticed "fresh" red marks on Garcia's forehead and left arm that "would possibly turn into bruising later[.]" Wilt did not recall any dogs running loose in the residence.

{¶5} Toward the end of his investigation at the residence, Wilt observed a portion of the wall caved in approximately one foot off the ground that was about two to four feet in height and approximately one to three feet wide. He then asked Garcia if she had been shoved into the wall. She responded, "I'm not going to lie, yes, Jason * * * pushed [me] into the wall." Wilt then decided to arrest Mack based on the redness on Garcia's arm and forehead coupled with her statement that he had pushed her into the wall.

**{¶6}** Upon Haley's return, she confirmed that the hole had not been there before she left that evening. Haley and Garcia were crying and screaming while Mack was being arrested. Wilt never heard Garcia recant her story on the date of Mack's arrest.

**{¶7}** On cross examination, Wilt agreed that Garcia's redness could have been caused by "anything" and that he did not witness the altercation between Mack and Garcia.

**{¶8}** Garcia was the only other witness to testify at trial. She was called as the court's witness. She testified that she lives with Mack and their daughter, Jordan, and that Haley has since moved out of the house.

**{¶9}** Garcia explained that she and Mack were having a "massive argument" on the night of the 911 call. She said that they are generally loud people and that they were screaming, but there was no physical contact during their argument. Garcia believed that Haley called the police because she did not want Jordan to see them fighting.

**{¶10}** Garcia was asked by the state,

"Q. Do you remember saying 'Thank God, it's the police. Come in. Do you see the red mark on my face?'

"A. I don't remember saying, 'See the mark on my face.' I remember saying 'Yes, come in.' The police, yes, I invited, told them to come in.

"Q. Now, you don't remember * * * - - saying about the mark on your face, but is it possible you said that?

3

"A. Um, with my anger, it's possible I said that, yes.

"Q. Okay. Did you have any red marks on your face?

"A. Um, I don't remember * * *.

"* * *

"Q. And did you tell them what was going on?

"A. Well, I was angry. I was saying some things that I shouldn't have said, yes.

"Q. Such as?

"A. That, um, Jason hit me. I was so mad at him, I was beyond angry. I was furious.

"Q. But you don't remember why?

"A. No. We were just - - that's Jason and I. We argue, and I don't even remember what we were arguing about.

"* * *

"Q. Now, you said you remember telling the officers that Jason hit you. Did he, in fact, hit you that day?

"A. No. I – - I'm sorry to say and I'm ashamed to say that I did say that and it wasn't true. I'm sorry."

[At this point the trial court advised Garcia of her Fifth Amendment Right against self-incrimination and her ability to remain silent.]

"* * *

"Q. So you told the officers he hit you, correct?

"A. I said he pushed me into the wall and I fell into the wall.

"Q.  * * * And was the wall damaged?

"A.  Yes.

"Q.  Describe the damage to the wall.

"A.  * * * there was a hamper against the wall and I fell against it, and so my shoulders hit and it went on my side.  You know just smashed it and - -

"Q.  * * * Was it a wall that was damaged?

"A.  Prior?  No.

"Q.  Okay.  And was there a hole put into the wall?

"A.  Yes."

{¶11} Garcia readily admitted at trial telling the police that Mack hit her and pushed her into the wall that night.  She explained that she was, "so angry at Jason, I just wanted to hurt him the worst I could * * *."  So she decided to blame this on him.  However, Garcia then explained that the damage to the wall actually occurred when the police arrived.  She said her two big dogs "go crazy" when someone knocks on the door.  She said her dogs went "berserk," and she stepped backward and hit the hamper and fell into the wall.  She had hip replacement surgery and was not steady on her feet.  She thinks her face hit the wall when she fell into the wall, but she did not recall hitting her forehead.

{¶12} Garcia further testified that when they were arresting Mack, she advised the officers that he did not do this, that he had not hit her, and that she had just said that because she was angry with him.  She refused police requests to take photographs of her red marks and the damage to the wall.

5

{¶13} Upon questioning by defense counsel, Garcia confirmed that she lied to the police about Mack hitting and pushing her to "get back at him." She explained that when the officers were taking Mack from their home, she was begging them and screaming, "I'm sorry, it wasn't true. He didn't hit me."

{¶14} Appellant's four assignments of error on appeal assert:

{¶15} "The trial court erred by failing to grant a judgment of acquittal pursuant to Crim.R. 29(A), and thereafter entering a judgment of conviction of that offense which was not supported by sufficient evidence in derogation of Appellant's right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution.

{¶16} "The trial court erred by entering a judgment of conviction that was against the manifest weight of the evidence in derogation of Appellant's right to due process of law, as protected by the Fourteenth Amendment to the United States Constitution.

{¶17} "The trial court engaged in plain error when it considered Garcia's hearsay statement as substantive evidence.

{¶18} "Trial counsel failed to provide effective assistance of counsel, guaranteed by both the United States Constitution, and the Ohio Constitution."

{¶19} Each of Mack's arguments is founded on his claim that the trial court improperly relied on hearsay statements made by Garcia as a basis for its decision. For ease of analysis, we collectively address Mack's first three assigned errors.

{¶20} Mack first argues that the trial court should have granted his motion for acquittal. Crim.R. 29(A) provides that "[t]he court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of

6

one or more of the offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense * * *."

{¶21} On appeal of the denial of a Crim.R. 29(A) motion, the "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Williams*, 74 Ohio St.3d 569, 576 (1996), citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The trier of fact in this case was the trial court judge. A sufficiency argument challenges whether the state has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶22} Mack's second argument asserts that the trial court's decision was against the weight of the evidence. He alleges that the only two people present during the alleged offense deny that it occurred, and as such, the trial court's decision is against the weight of the evidence. Again, Mack relies on his claim that Garcia's out-of-court statements were improperly relied on for the truth of the matter asserted contrary to the hearsay rule.

{¶23} When an appellant asserts that his conviction is against the manifest weight of the evidence, the appellate court must review the entire record and consider the weight of the evidence, not just the legal sufficiency of the evidence. *State v. Wilson*, 8th Dist. Cuyahoga No. 88289, 2007-Ohio-2373, ¶10. "'The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. If there was sufficient evidence for the triers of fact to find defendant guilty beyond a reasonable doubt [an appellate court] will not reverse a guilty verdict based on

7

manifest weight of the evidence.'" (Citations omitted.) *Id.* Further, when testing the manifest weight, an appellate court is to determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶24} Mack's third assigned error claims that the trial court committed plain error in relying on Garcia's out-of-court statements as substantive evidence of the offense. Mack did not object to the introduction of the claimed hearsay statements by Garcia. Accordingly, he has waived all but plain error.

{¶25} Crim.R. 52(B) provides that plain error or "errors affecting substantial rights" may be noticed on appeal even if the alleged error was not brought to the attention of the trial court. "Plain error is present only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different." *State v. Turner*, 11th Dist. Ashtabula No. 2010-A-0060, 2011-Ohio-5098, ¶34, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126 ¶108. Further, an appellate court will recognize plain error "under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶26} Mack was charged with one count of domestic violence in violation of R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶27} He asserts that the trial court erroneously considered hearsay statements by the victim as substantive evidence of guilt based on the trial court's written judgment entry, which states in part, "The court finds that the statement made by the victim on the date of the occurrence * * * combined with the testimony of Officer Wilt regarding the visible physical injuries/marks on her forehead and left arm are corroborative of the victims [sic] original version to law enforcement."

{¶28} Mack claims that the trial court explicitly relied on Garcia's hearsay statements as evidence. We disagree. Instead, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." (Emphasis added.) Evid.R. 801(C). Unless the statement meets one of the exceptions to the rule, hearsay is not admissible at trial. Evid.R. 802. Here, Officer Wilt was free to testify about Garcia's statements to him upon his arrival and during his response to the 911 call because her statements constitute excited utterances, an exclusion to the hearsay rule.

{¶29} An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). An excited utterance is not excluded by the hearsay rule even if the declarant is available to testify. The rationale for the exception is the premise that statements made under the stress of an event do not allow for reflective thinking, and as such, the statements are considered reliable. *State v. Taylor*, 66 Ohio St.3d 295, 300 (1993).

9

{¶30} Further, the admission of evidence, such as an excited utterance, is within the trial court's discretion, and its decision will not be reversed absent an abuse of discretion. *Roach v. Roach,* 79 Ohio App.3d 194, 205 (1992).

{¶31} The Ohio Supreme Court has adopted a four-part test to determine the admissibility of an excited utterance, referred to in common law as spontaneous exclamations:

{¶32} "Such testimony as to a statement or declaration *may be* admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination *continued* to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." (Emphasis sic.) *Taylor* at 300-301, quoting *Potter v. Baker*, 162 Ohio St. 488 (1955).

{¶33} In *State v. Payne*, 8th Dist. Cuyahoga No. 76539, 2000 Ohio App. LEXIS 3274, *6-*7 (Jul. 20, 2000), the court of appeals upheld the introduction of the victim's statement to officers that her boyfriend had punched her. The court explained that her statement to officers was admissible as an excited utterance since she made the statement at a time when she was still under the stress of the event. The victim later retracted her statement and claimed that she was the aggressor. *Id.*

10

{¶34} In *State v. Ducey*, 10th Dist. Franklin No. 03AP-944, 2004-Ohio-3833, the court applied the four-prong test and allowed officers to testify about statements made by the domestic violence victim in that case, who refused to testify. The officers' testimony about the victim's out-of-court statements was properly limited to the identification of her attacker and to details as to what happened during the attack. *Id.* at ¶19-26.

{¶35} In the instant case, Wilt testified that Garcia opened the door during her "massive argument" with Mack and freely stated, "thank God, it's the police. Do you see the red mark on my face?" Furthermore, upon questioning during Wilt's approximate ten minute investigation, Garcia advised Wilt that she was "not going to lie" and that Mack had pushed her into the wall and caused the hole in the drywall.

{¶36} In applying the four prongs set forth in *Potter*, the foregoing statements were properly before the court as excited utterances. First, Garcia's statements immediately following her altercation with her husband to an officer responding to a 911 call were undoubtedly made during an event startling enough to produce nervous excitement. Second, Garcia's statements were made under the stress and excitement of the domestic dispute and involvement of the police. Her statements were made shortly after the domestic dispute and during Wilt's questioning while still under the excited nervousness of the dispute and police response. Garcia confirmed that she and Mack had been screaming and fighting. Third, Garcia's statements directly related to this startling event, i.e., the massive argument. And finally, Garcia personally experienced the matters asserted in her statements. Accordingly, Wilt was free to

11

testify as to Garcia's excited utterances, and the trial court did not rely on improper testimony as a basis to determine Mack's guilt.

{¶37} Thus, as in *Payne* and *Ducey*, supra, Garcia's statements were properly admitted, and there was no plain error. Evid.R. 803(2). Appellant's third assigned error is meritless.

{¶38} In addition, Garcia personally testified as to the substance of her prior, out-of-court statements to the police. Although she attempted to explain at trial that her prior statements to the police were lies manufactured to "get even" with Mack because she was mad at him, the trial court was free to reject her in-court explanation. The trier of fact is in the best position to determine witness credibility. *State v. Crowe*, 9th Dist. Medina No. 04CA0098, 2005-Ohio-4082, ¶42.

{¶39} Thus, and in applying the facts in the record to the applicable statute, we find sufficient evidence for each element of Mack's domestic violence conviction beyond a reasonable doubt. Wilt testified that Garcia, Mack's wife, advised him at the scene that Mack pushed her into the wall. Wilt also described the damage to the wall and the "fresh" red marks on Garcia's arm and forehead. Furthermore, after reviewing the entire record and in considering Garcia's credibility, the trial court did not lose its way and cause a miscarriage of justice. Accordingly Mack's first and second assigned errors lack merit.

{¶40} Mack's fourth and final assignment of error claims that he was denied effective assistance of trial counsel based on his counsel's failure to object to the introduction of Garcia's alleged hearsay statements. We disagree. To succeed on a claim of ineffective assistance of counsel, an appellant must show that his attorney's

12

representation fell below an objective standard of reasonableness, and that but for such errors, there is a reasonable probability that the outcome of the case would have been different. *Westlake v. Zidian*, 8th Dist. Cuyahoga No. 93084, 2010-Ohio-1577, ¶29-30, quoting *Strickland v. Washington*, 466 U.S. 668 (1984).

{¶41} Mack correctly points out that his trial counsel did not object to the introduction of Garcia's out-of-court statements in Wilt's testimony. However, as outlined herein, Wilt's testimony containing Garcia's statements she made on the date of the offense was properly before the trial court. Evid.R. 803(2). Thus, even assuming that counsel had objected to the admission of Garcia's out-of-court statements, the outcome of the case would have remained unchanged. Thus, Mack's fourth assignment of error lacks merit.

{¶42} For the reasons outlined in the opinion of this court, appellant's assignments of error lack merit. The judgment of the Ashtabula County Court, Western District, is affirmed.


DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶43} The majority contends that Ms. Garcia's prior statements were properly before the trial court as excited utterances even though she recanted her story upon

13

direct testimony and cross-examination at trial that her husband had committed domestic violence. For the reasons stated, I respectfully dissent.

**{¶44}** "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

**{¶45}** Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence.

**{¶46}** Evid.R. 803, "Hearsay exceptions; Availability of declarant immaterial" states in part:

**{¶47}** "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

**{¶48}** "* * *

**{¶49}** "(2) Excited utterance.

**{¶50}** "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

**{¶51}** This matter involves an appeal of Mr. Mack's conviction for domestic violence that arose from an altercation with his wife, Ms. Garcia. Mack's daughter placed a 911 call reporting a domestic situation. Officer Wilt responded. Garcia answered the door stating, "thank God, it's the police. Do you see the red mark on my face?" Officer Wilt noticed "fresh" red marks on Garcia's forehead and left arm. He also noticed a portion of a wall which appeared caved in. At that time, Garcia initially said Mack pushed her into the wall. Based on the redness on Garcia's forehead and arm

14

coupled with her statement that Mack pushed her into the wall, Officer Wilt arrested Mack for domestic violence.  However, Garcia immediately recanted her story.

{¶52}  Both Officer Wilt and Garcia testified at trial.  Officer Wilt testified with respect to Garcia's initial statements when she answered the door, which she later recanted.  The trial court permitted that testimony as an excited utterance hearsay exception.  On cross-examination, Officer Wilt testified that Garcia's redness could have been caused by "anything" and that he did not witness the altercation between Mack and Garcia.  In fact, Mack and Garcia deny that any physical altercation occurred.  There was no testimony or evidence supporting these assumptions other than Garcia's statement which did not, in any detail, accuse her husband of physical touching.

{¶53}  Garcia was available as a witness and testified at trial.  Garcia testified she and Mack had an argument and screamed at each other.  Garcia said there was no physical contact.  She stated that her initial story to Officer Wilt was false.  Garcia further testified that Mack never hit her and that the damage to the wall was caused by her dogs.  Garcia was merely angry at Mack and wanted to "get back at him."

{¶54}  The excited utterance "'exception applies regardless of the declarant's availability as a witness.'"  *State v. Canada*, 10th Dist. Franklin No. 14AP-523, 2015-Ohio-2167, ¶28, quoting *State v. McClain*, 10th Dist. Franklin No. 13AP-347, 2014-Ohio-93, ¶26, citing Evid.R. 803.  However, "[t]he best evidence is generally given by one who can offer direct testimony."  *Brate v. Rolls-Royce Energy Sys.*, 5th Dist. Knox No. 12CA000001, 2012-Ohio-4577, ¶25.

{¶55}  This writer believes that Garcia's direct testimony was the best evidence which included the fact that she made up the whole story and that her husband was not

15

guilty. Notwithstanding this direct testimony, however, the trial court relied solely on Officer Wilt's testimony repeating Garcia's excited utterances, which she recanted, for the truth of the matter asserted.

{¶56} "[T]he State is initially entitled to pursue the prior statement with the witness - both to give the witness the fullest opportunity to respond to the alleged prior statement and to more clearly determine whether the witness intends to specifically deny the statement. See *State v. Hubbard*, 7th Dist. Jefferson No. 01JE4, 150 Ohio App.3d 623, 2002-Ohio-6904, ¶¶13-14, * * *. At this stage, the issue is one of laying the proper foundation for possible impeachment about what the witness has already stated to another person * * *." (Parallel citation omitted.) *State v. Arnold*, 3rd Dist. Seneca No. 13-13-27, 2014-Ohio-1134, ¶39.

{¶57} The trial court relied on those prior false statements uttered by the victim in convicting and sentencing Mack for domestic violence in violation of R.C. 2919.25(A) ("[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member.")

{¶58} Each of Mack's arguments on appeal centers around his claim that the trial court improperly relied on hearsay statements made by Garcia as a basis for its decision. This writer agrees with Mack that the court committed plain error in relying on Garcia's out-of-court statements as substantive evidence of his guilt. The court's written judgment entry reveals that it explicitly relied on Garcia's hearsay statements as evidence, i.e., "The court finds that the statement made by the victim on the date of the occurrence * * * combined with the testimony of Officer Wilt regarding the visible

16

physical injuries/marks on her forehead and left arm are corroborative of the victims (sic) original version to law enforcement."

**{¶59}** The majority asserts that Officer Wilt was free to testify about Garcia's statements to him upon his arrival and during his response to the 911 call finding Garcia's statements to be excited utterances, an exception to the hearsay rule, even though she recanted her story. This writer disagrees.

**{¶60}** Regarding excited utterances, the Staff Notes to Evid.R. 803(2) state that "[t]his exception derives its guaranty of trustworthiness from the fact that declarant is under such state emotional shock that his reflective processes have been stilled. Therefore, statements made under these circumstances are not likely to be fabricated. McCormick § 297 (2d ed. 1972)."

**{¶61}** In addition, "there is a certain credibility attributable to excited utterances because they are not based upon reflective thought." *State v. Glossip*, 12th Dist. Warren No. CA2006-04-040, 2007-Ohio-2066, ¶10. "Excited utterances are deemed reliable because, by their nature, they do not entail an opportunity for the declarant to reflect and fabricate or to distort the truth." *State v. Sutphin*, 8th Dist. Cuyahoga No. 96015, 2011-Ohio-5157, ¶35, citing *State v. Wallace*, 37 Ohio St.3d 87, 88 (1988).

**{¶62}** In my humble opinion, the statements at issue were not properly before the trial court as excited utterances. It is true that Garcia's statements immediately followed a verbal altercation she had with her husband. It is true that the statements could have been made as a result of stress and excited nervousness. It is also true that Garcia confirmed she and Mack had been screaming at each other. However, this writer stresses again that Garcia immediately recanted her story during her husband's

arrest for domestic violence. Garcia revealed there was no physical contact. Garcia further stated that her initial story to Officer Wilt claiming she was physically abused by Mack was false. Thus, under Evid.R. 803(2), how were Garcia's statements related to a "startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" if the whole thing was untrue? How could Garcia be under stress due to a startling event since she admits she made up the whole story?

{¶63} Based on the facts presented and for the reasons addressed, this writer believes there was plain error as Garcia's initial statements do not constitute excited utterances under the hearsay exception of Evid.R. 803(2). Even assuming they do, Garcia's direct testimony at trial revealed those initial statements were false. Thus, I believe the court improperly relied on a recanted story instead of the best evidence, i.e., Garcia's direct testimony, as a basis in determining Mack's guilt.

{¶64} I respectfully dissent.