THE STATE OF OHIO, APPELLEE, *v.*
DACONS, APPELLANT.

(No. 81AP-608—Decided May 4, 1982.)

*Mr. Michael Miller,* prosecuting attorney, and *Ms. Karen L. Martin,* for appellee.

*Mr. G. Rand Smith* and *Mr. Christopher J. Minnillo,* for appellant.

MOYER, J. This matter is before us on defendant's appeal from a judgment of the Court of Common Pleas of Franklin County on a jury verdict finding defendant guilty of voluntary manslaughter. Defendant admitted killing Anthony Lee Evans with a shot from a semi-automatic .22 caliber rifle. Defendant asserted that he shot Evans in self-defense as Evans approached defendant in his front yard, threw a beer bottle at him and reached into his pocket as if to reach for a knife. Defendant asserts the following three assignments of error in support of his appeal:

"I. It was an abuse of discretion and prejudicial error for the trial court to call Vernon Cauthon as its own witness, and thereafter allow the state to impeach the witness with prior inconsistent statements.

"II. Even if it were proper for the court to call Vernon Cauthon as its own witness, it was prejudicial error for the court to allow the state to impeach this witness by means of prior inconsistent statements.

"III. The verdict of guilty was against the manifest weight of the evidence."

We will consider the third assignment of error first. The third assignment of error is overruled because there is sufficient evidence in the record from which the jury could have reasonably concluded that defendant shot Evans at a distance that indicates defendant did not act in self-defense. *State* v. *Swiger* (1966), 5 Ohio St. 2d 151 [34 O.O.2d 270]. The evidence supporting the verdict of voluntary manslaughter consists of testimony that the only blood observed was on the curb line of the house across the street from defendant's house where he claims the victim put him in fear of his life; testimony that there was no blood on the driveway of defendant's house; testimony of the deputy coroner that there were no powder burns on the victim, which indicates that the shot was fired some distance away from the victim; testimony that the ruptured artery caused by the bullet would have resulted in rapid squirting of blood within seconds, which would have prevented the victim from walking any significant distance; testimony that no knife was found; and testimony of the owner of the house across the street from defendant's house that the victim came to her door, was bleeding profusely on her front porch, and then went to a tree in her front yard, where he died.

The evidence on behalf of the defendant consisted of considerable testimony indicating that Evans had threatened defendant several times prior to the inci-

dent and had repeatedly come to defendant's house to visit defendant's daughter after defendant had told him he was not permitted in the house. Defendant testified that Evans became enraged at him after defendant told Evans to leave his house and that, as he walked toward defendant's house, Evans opened a knife, threw a beer bottle at defendant, and then reached into his pocket, at which time defendant shot him.

The transcript also includes the testimony of Vernon Cauthon, defendant's ten-year-old nephew. That testimony, which conflicted with Cauthon's prior statements to the police, is the subject of assignments of error one and two.

It is the jury's responsibility to determine the credibility of the witnesses and to determine the ultimate facts in the case. There is no indication that the jury lost its way in this case, and the third assignment of error is overruled.

The first and second assignments of error are interrelated and are considered together. Evid. R. 607 provides in pertinent part as follows:

"The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. * * *"

Evid. R. 614 provides for the calling and interrogation of witnesses by the court in pertinent part as follows:

"(A) Calling by Court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

"(B) Interrogation by Court. The court may interrogate witnesses, in an impartial manner, whether called by itself or by a party."

Vernon Cauthon, defendant's ten-year-old nephew, was in defendant's house watching the incident that led to the shooting of Evans. When Cauthon was called by the prosecutor to testify on behalf of the plaintiff, he said that, at the time of the shooting, he was standing in his open bedroom window and from there he could see Evans standing across the street cursing and pointing at defendant's house. He testified that Evans crossed the street onto defendant's sidewalk and that defendant was standing on his own front porch. He further testified that he saw defendant enter his house and come out with the rifle and then saw Evans, who was standing on the corner of defendant's driveway, throw a bottle at defendant, who by that time was also on the driveway. The witness stated that he turned his head, heard a gunshot, and then saw Evans crossing the street to the neighbor's front yard.

When this testimony was offered, the plaintiff, in a bench conference, indicated that it differed from statements Cauthon had made to police detectives on the night of the shooting and the next day. Plaintiff's counsel requested the court to call Cauthon as its witness in order that plaintiff's counsel could question Cauthon regarding his purported prior inconsistent statements. The court acknowledged that plaintiff could not impeach Cauthon by reference to his inconsistent statements because plaintiff was not surprised. The trial court then called Vernon Cauthon as its witness "in order to give both sides the clear opportunity to cross-examine this Defendant [sic] for the full range of cross-examination, allowed by law and also the Court has, feels that although it's calling as the Court's witness, the Court is not going to ask any questions of this witness at this time."

The jury was not advised that Cauthon had become the court's witness when plaintiff's counsel resumed his questioning of Cauthon. Cauthon then denied telling the detectives that Evans never crossed the street onto defendant's property, and that defendant shot Evans while Evans was standing across the street from defendant's house. He also denied

telling the detectives that Evans was on the curb across the street when he threw a beer bottle at defendant, and that he had told them that he saw Evans throw a knife at defendant.

Following Cauthon's testimony, plaintiff called the two detectives who testified that Cauthon had told them that Evans threw the beer bottle and a knife at defendant from across the street, and that Evans was across the street from defendant's house when defendant shot and killed him. The court did give the jury a limiting instruction regarding the evidence of both detectives, stating that their testimony was to be considered only to test the credibility of Cauthon's in-court statements.

Defendant argues that the action of the trial court in making Vernon Cauthon its witness permitted plaintiff to do precisely what Evid. R. 607 prohibits the plaintiff from doing in the absence of surprise.

The case of *State* v. *Adams* (1980), 62 Ohio St. 2d 151 [16 O.O.3d 169], controls, although it was decided prior to the effective date of the Ohio Rules of Evidence. The Ohio Rules of Evidence, and in particular Evid. R. 607 and 614, codify the common-law evidentiary rules applicable in Ohio prior to the adoption of the Rules of Evidence as pertinent to this case.

In *State* v. *Adams,* upon request of the state, a witness was called as the court's witness because she had made statements in the past that were inconsistent and would be inconsistent with her expected trial testimony. The witness was called by the court who asked a short series of non-leading questions and then permitted both prosecution and defense the opportunity to cross-examine. The Supreme Court held that, under Ohio common-law rules of evidence, the prosecution, had it called the witness, would have been deemed to have vouched for her credibility and could not thereafter have impeached her. The court stated that the trial court had the power under

common-law evidentiary rules to call witnesses in the exercise of sound discretion. The court rejected the argument of the defense that it would be unfair to permit the prosecution to gain the right to impeach the witness and to be able to ask leading questions of the witness. The Supreme Court found no abuse of discretion, as there was justification in that the witness' testimony would be beneficial to the jury in performing its fact-finding responsibilities.

In this case, the state made a motion to call Cauthon as the court's witness on the basis that his trial testimony was expected to be different than pretrial statements he had given the state. Vernon Cauthon was an important eyewitness whose testimony could reasonably be found to be necessary to aid the jury in responsibly carrying out its fact-finding function. The reason the state requested the court to call Cauthon as a witness, rather than calling him as a witness itself, was to avoid being unable to test the credibility of his testimony by his prior out-of-court statements, just as in *Adams*.

Evid. R. 102 provides as follows:

"Purpose and Construction

"The purpose of these rules is to provide procedures for the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined. These rules shall be construed to state the common law of Ohio unless the rule clearly indicates that a change is intended and shall not supersede substantive statutory provisions."

Evid. R. 607 provides that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. That statement, as pertinent, is consistent with the common-law rule applicable when *Adams* was decided. Evid. R. 607 otherwise liberalizes the vouching rule applicable at the time the *Adams* case was decided, but, as stated, so far as that exception is concerned, it is

completely consistent with the rule of law applicable at the time of the *Adams* case as regards the use of inconsistent statements to impeach a witness called as the court's witness upon application by the state which could not show surprise. Evid. R. 614, which permits the court on its own motion or at the suggestion of a party to call witnesses, is completely consistent with the common law applicable at the time of the *Adams* case.

So far as pertinent, Evid. R. 607 and 614 state the common law applicable at the time the *Adams* case was decided.

The trial court sustained the state's motion to call Cauthon as the court's witness. Defendant vigorously asserted that the jury should not be informed of this matter and that the court should make it appear that the witness was called by the state, even if the court were to allow impeachment by prior inconsistent statements after it became apparent during the testimony that there were such inconsistencies. The procedure used by the trial court was a product of the defendant's request. Therefore, the defendant cannot complain that the trial court did not initially call the witness as its own witness and so inform the jury prior to permitting both sides to cross-examine the witness.

This interpretation is consistent with other authority which allows impeachment of a witness called by the court to include the use of prior inconsistent statements made by the witness to test his credibility, though the giving of a limiting instruction restricts consideration of that evidence to credibility. See, generally, Annotation, Court's Witnesses (Other Than Expert) In Criminal Prosecution, 67 A.L.R. 2d 538.

The first and second assignments of error are overruled.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and McCORMAC, JJ., concur.