JOURNAL ENTRY AND OPINION
Jesus Colon appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of attempted murder, felonious assault, and unlawful discharge of a firearm into a habitation. On appeal, Colon contends that his conviction is against the manifest weight of the evidence and not supported by sufficient evidence because the sole eyewitness recanted his identification testimony, and Colon further contends that the trial court improperly permitted the state to impeach that eyewitness. After a careful review of the record and applicable law, we reject these contentions and affirm the judgment of the trial court.
The facts of the case reveal that Carlos Santiago traded his Honda Civic for Eduardo Castro's Volkswagen. Santiago subsequently changed his mind and demanded to undo the car trade, which Castro refused to do. Santiago then came to Castro's house, repeatedly demanded his Civic be returned to him, and threatened Castro. On the evening of September 24, 1999, Santiago took the Honda Civic from the driveway of Castro's home. The next day, Santiago, Jesus Colon, and some other males, slowly drove a Toyota past Castro's house seven or eight times.
Sometime before midnight on September 25, 1999, Cleveland Police Patrolman Kevin Fairchild arrived at Castro's home in connection with an investigation of the stolen Honda. At that time, he learned about the Toyota which had been driving up and down the street that day. Describing the occupants of the vehicle, Castro identified Carlos Santiago as the driver. He also stated that there were three other males in the car and that the front seat passenger possibly could have been Jesus Colon. (Tr. 529.) Fairchild then completed his report and instructed Castro to get a license plate number and inform the police if the Toyota returned. About five minutes after Fairchild left Castro's home, Santiago drove the Toyota down the street with gunshots coming from the front passenger side of the car. One bullet struck Castro in the leg, and others hit his house, his car, and his neighbor's house.
Fairchild received the report of this drive-by shooting and immediately returned to Castro's house, where he found Castro hopping on his porch, shouting, "They shot me." He also stated, "Santiago was driving the car and Jesus Colon shot me."
On September 27, Castro gave Cleveland Police Detective David Santiago a written statement identifying Carlos Santiago as the driver of the Toyota and Colon as the one who fired the shots. In the statement, Castro also explained that Santiago came with Colon to shoot him because Santiago was angry with him for refusing to return the Civic. According to Detective Santiago, Castro expressed concerns about further retaliation and physical harm from Carlos Santiago and Colon, requesting that the police arrest these two individuals. In furtherance of his desire for their arrest, Castro drove with Detective Santiago to assist in locating addresses for both Colon and Carlos Santiago.
Thereafter, at a preliminary hearing held October 18, 1999, Castro identified Santiago as the driver and Colon as the shooter in the drive-by shooting. Subsequently, a grand jury indicted both Carlos Santiago and Jesus Colon for attempted murder, felonious assault, and unlawful discharge of a firearm into a habitation.
Prior to trial on these charges, the prosecutor learned that Castro had become uncertain about his identification of Colon as the shooter. As a result, the state asked the trial court to call Castro as its witness to enable the state to cross-examine him based on his earlier identifications of Colon regarding Colon's involvement in the shooting. The record reveals that Colon's defense counsel stated that he agreed with the prosecutor's request. As a result, the court granted the state's request to call Castro as the court's witness.
On May 9, 2000, the court began a joint jury trial of Colon and Santiago. Castro, testifying as the court's witness, stated that gunshots came from the front passenger side of the Toyota and that as he turned his head, he got a view of the driver and the passenger, but he testified at trial that he did not know the identity of the shooter. Under the state's questioning, however, he also testified that subsequent to the preliminary hearing he ran into Colon in a store where Colon worked, and that Colon denied any involvement in the drive-by shooting. His testimony also revealed that his aunt and Colon's mother were friends, that he had gone to his aunt's house and apologized to Colon's mother, who happened to be there. Also, he learned from Colon's mother the name of Colon's attorney, and he subsequently went to the lawyer's office and met with the lawyer to discuss the matter of his identification of Colon; coincidentally, Colon had a meeting with his attorney at that same time.
Detective Santiago testified that the shells recovered from the crime scene came from a Makarov, a rare Russian-made semi-automatic handgun. Detective Santiago further testified that during a search of Colon's house, he found, hidden beneath the mattress of a crib, a holster made to carry this type of weapon.
Following the trial, the jury returned a verdict finding Colon guilty of all three counts. The court subsequently sentenced Colon to a term of fourteen years for his participation in these offenses.
Colon now appeals, raising three assignments of error for our review. We consider his second assignment of error first, which states:
 II. THE TRIAL COURT COMMITTED ERROR BY ALLOWING THE PROSECUTOR TO CONDUCT AN EXAMINATION OF THE LEADING STATE'S WITNESS WITH LEADING QUESTIONS AND CROSS EXAMINATION, AND BY ALLOWING IMPEACHMENT OF THE SAME WITNESS WITH PRIOR INCONSISTENT STATEMENTS.
Colon claims that the court erred in allowing the state to cross-examine and impeach Castro with prior inconsistent statements because the state lacked the element of surprise required for impeaching its own witness. The state asserts that it properly cross-examined Castro because he testified as a court witness in accordance with Evid.R. 614.
The issue is then whether the court properly allowed the state to cross-examine and impeach Castro with his prior inconsistent statements identifying Colon as the individual who fired the gunshots.
Evid.R. 607 delineates the circumstances where a party may impeach a witness:
R.607 IMPEACHMENT
(A) Who may impeach
 The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. * * *
Furthermore, a court may call witnesses pursuant to Evid.R. 614, which states in pertinent part:
(A) Calling by court
 The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.
The court, in State v. Apanovitch (1987), 33 Ohio St.3d 19, explained the application of Evid. R. 614 as follows:
 In State v. Adams (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144, paragraph four of the syllabus, we held that "a trial court possesses the authority in the exercise of sound discretion to call individuals as witnesses of the court." Evid.R. 614 also provides that a court may call witnesses on its own motion and allow each party to then cross-examine those witnesses. The state need not demonstrate surprise in order to cross-examine such a witness. (Citation omitted.)
Finally, a review of the applicable law indicates that Evid.R. 607 requirements are inapplicable to witnesses called by a court at the state's request. State v. Webb (1994), 70 Ohio St.3d 325, 341, citing State v. Dacons (1982), 5 Ohio App.3d 112, 114, where the court stated the following in its syllabus:
 Evid.R. 607 is consistent with the prior common-law rule of State v. Adams, 62 Ohio St.2d 151, 404 N.E.2d 144
[16 O.O.3d 169], insofar as it permits the trial court to call, as its witness, a witness whom the state requests the trial court to call, and the state may impeach said witness with prior inconsistent statements even though the state cannot demonstrate surprise.
Here, the record indicates that prior to trial the state learned of Castro's intention to recant his prior identification of Colon. The prosecutor admitted that the state could not demonstrate surprise by the testimony it expected of Castro as required by Evid.R. 607 in order to impeach him. He therefore requested, and defense counsel agreed to, the court using its discretionary power to call Castro as a court witness. This enabled the state to cross-examine and impeach Castro with his earlier identification of Colon. See Apanovitch, supra. Colon does not argue that the court abused its discretion in granting the state's request, nor could he, since his trial counsel consented to the state's request. Rather, he is critical of the court for allowing cross-examination and impeachment of Castro, claiming that the state failed to demonstrate surprise as required by Evid.R. 607. This argument entirely ignores the fact that Castro testified as a court witness in conformity with Evid.R. 614, and not as a state witness. Thus, the surprise required by Evid.R. 607 is inapplicable to his testimony. Accordingly, the court properly allowed the state to cross-examine him and to impeach him with his prior inconsistent statements, see Webb,Dacons, supra. Therefore, we overrule this assignment or error.
Colon's first and third assignment of error state:
 I. IN LIGHT OF THE FACT THAT THE SOLE EYEWITNESS TO THE CRIME TESTIFIED THAT THE APPELLANT WAS NOT THE ACTOR, THE APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE EVIDENCE PRESENTED WAS INSUFFICIENT, AS A MATTER OF LAW, TO SUSTAIN A CONVICTION, WHICH CONSTITUTES A DENIAL OF DUE PROCESS OF LAW.
Colon contends that the only eyewitness against him — Castro — testified at trial and recanted his prior identification of Colon as the shooter; therefore, his conviction is against the manifest weight of the evidence and not supported by sufficient evidence. The state maintains that the conviction is supported by sufficient evidence and not against the manifest weight of the evidence. The issue then concerns the sufficiency of the evidence and the manifest weight of the evidence.
The standard of review for a claim of insufficiency of evidence is summarized in State v. Martin (1983), 20 Ohio App.3d 172 :
 * * * [T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. (Citations omitted.)
In this case, Colon failed to make a Crim.R. 29 motion for acquittal at trial, and thus failed to preserve his insufficiency claim for appeal. See State v. Roe (1989), 41 Ohio St.3d 18, 25. The record here reveals that during the presentation of its case in chief, the court called Castro as its witness and the prosecutor elicited the following from him: that he identified Colon as the shooter at the preliminary hearing held on October 18, 1999, that this identification was corroborated by his statement to Patrolman Fairchild immediately after the shooting, by his subsequent signed written statement to Detective Santiago, and by evidence of his assisting Detective Santiago in obtaining Colon's address. Although, at trial, he recanted his prior identification, the state presented evidence of influence which may have affected his testimony at trial: the relationship between Colon's mother and Castro's aunt; the allegedly coincidental meeting between Castro and Santiago at the store where Santiago worked, and the meeting at the office of Colon's attorney. In addition, evidence showed that shells from the crime scene came from a rare Russian-made semiautomatic gun and that the police discovered a holster made to carry this type of weapon hidden at Colon's home. From the testimony presented, even if Colon had preserved his claim of insufficiency, a rational trier of fact could have found evidence of all essential elements of the crimes charged.
The claim that a conviction is against the manifest weight of the evidence involves a different test. In Martin, the court summarizes the standard of review for a manifest-weight claim:
 * * * We next consider the claim that the judgment was against the manifest weight of the evidence. Here the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
The record indicates that Castro, the eyewitness, identified Colon at a preliminary hearing and several other occasions. To prove its allegations of influence on the witness, the state presented evidence of a series of meetings where Colon or his family may have exerted undue influence on him and affected his trial testimony. Under proper instruction, the court presented the issue of Castro's credibility to the jury. Having had the opportunity to review the testimony, weighing the evidence and all reasonable inferences and considering the credibility of witnesses, we cannot conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. This is not an exceptional case in which the evidence weighs heavily against the conviction, warranting the granting of a new trial; consequently, we overrule this assignment of error.
On the basis of the foregoing, we reject these assignments of error and affirm Colon's conviction.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _______________________________ TERRENCE O'DONNELL, JUDGE
TIMOTHY E. McMONAGLE, P.J. and MICHAEL J. CORRIGAN, J. CONCUR.