[Cite as *State v. Moore*, 2019-Ohio-2396.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-070** |
| CARLOS D. MOORE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2017 CR 001353.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, *Karen A. Sheppert*, Assistant Prosecutor, and *Jenny B. Azouri*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH  44077 (For Plaintiff-Appellee).

*Thomas Rein*, 820 West Superior Avenue, Suite 800, Cleveland, OH  44113 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1}   Appellant, Carlos D. Moore ("Mr. Moore"), appeals from the judgment of the Lake County Court of Common Pleas, which sentenced him to 20 years imprisonment and labeled him a Tier 3 sex offender registrant after the court found him guilty of aggravated burglary, three counts of kidnapping, felonious assault with a pregnancy specification, rape, sexual battery, and intimidation of a victim or witness in a criminal case.

{¶2} Mr. Moore contends there was insufficient evidence to convict him and that the manifest weight of the evidence does not support a finding of guilty. He also argues the trial court erred in allowing the state to impeach its own witness, the victim, with prior inconsistent statements and in admitting her statements as substantive evidence. Lastly, Mr. Moore contends the trial court erred in ordering him to serve a consecutive sentence without making the appropriate findings pursuant to R.C. 2929.14 and HB 86 and that the court costs imposed by the trial court violated his constitutional and statutory rights.

{¶3} We affirm the judgment of the Lake County Court of Common Pleas. A thorough review of the record does not support Mr. Moore's contentions because there was sufficient evidence from which any rational trier of fact could have found all the elements of the offenses proven beyond a reasonable doubt and the manifest weight of the evidence heavily supports the verdict. Moreover, we do not find the trial court abused its discretion in granting the state's pretrial motion to call the victim as a court witness and then in allowing the state to cross-examine the victim and use her prior inconsistent statements for impeachment purposes. In addition, a review of the sentencing transcript and the sentencing entry reveals the trial court made the appropriate findings pursuant to R.C. 2929.14 in sentencing Mr. Moore to consecutive sentences. Lastly, a remand in this case is unnecessary in order for him to file a motion to waive costs since the trial court retains jurisdiction to do so.

**Substantive and Procedural History**

{¶4} On October 30, 2017, a warrant was issued for Mr. Moore's arrest following a violent incident that included the assault and rape of the victim, Ceaira Fluellen ("Ms.

2

Fluellen"), on the previous evening. Mr. Moore was arrested one month later while he was being held in the Tuscarawas County jail on an unrelated charge.

{¶5} Mr. Moore was subsequently indicted by the Lake County Grand Jury on eight counts: (1) aggravated burglary, a first degree felony, in violation of R.C. 2911.11(A)(1); (2) kidnapping, a first degree felony in violation of R.C. 2905.01(A)(2); (3) kidnapping, a first degree felony, in violation of R.C. 2905.01(A)(3); (4) felonious assault, a second degree felony, in violation of R.C. 2903.11(A)(1), with a pregnancy specification; (5) kidnapping, a first degree felony, in violation of R.C. 2905.019(A)(4); (6) rape, a first degree felony, in violation of R.C. 2907.02(A)(2); (7) sexual battery, a third degree felony, in violation of R.C. 2907.03(A)(1); and (8) intimidation of victim or witness in a criminal case, a first degree misdemeanor, in violation of R.C. 2921.04(A).

{¶6} Mr. Moore waived his right to be present at his arraignment and entered a plea of not guilty. The court continued his bond at $250,000 cash/surety, and he was ordered to have no contact with the victim.

{¶7} Ms. Fluellen wrote a letter to the court on December 14, 2017, to inform the court that Mr. Moore did not rape, assault, or kidnap her. Rather, she claimed the altercation between them was simply a "misunderstanding." Several weeks before trial, the state filed a motion pursuant to Evid.R. 614(A) for calling of court witness in order to be able to cross-examine Ms. Fluellen. The state explained in its motion that Ms. Fluellen had made many incriminating statements against Mr. Moore to police officers, paramedics, and medical personnel the day after the incident. On the date of Mr. Moore's arrest, however, Ms. Fluellen recanted her initial statements and claimed that two

3

unknown females attacked her, causing her injuries. The trial court found the state's motion well-taken and ordered Ms. Fluellen to be called as a court witness.

{¶8} Mr. Moore waived his right to a jury trial and elected to be tried by a judge pursuant to R.C. 2945.05.

{¶9} The trial court heard the testimony of firefighter/paramedic Sean F. Lawlor, who attended to Ms. Fluellen when she appeared at the police department to report damage to her apartment; and Patrolman Michael J. Walsh, who first interacted with Ms. Fluellen at the police department and summoned the paramedic. He also recorded Ms. Fluellen's various statements and interviewed Mr. Moore. The trial court also heard the testimony of Heather Kovach, R.N., Kelly Lott, R.N., regarding observed injuries, the procedures followed, and the results from the sexual assault examination. Karen Zavarella, Ph.D. of the Lake County Crime Laboratory, presented the DNA testing results. Radiologist David Horejs, M.D. presented the findings as to the injuries sustained in the assault, and Detective Ronald Parmertor described his investigation of the crime scene and his interview with Mr. Moore. Mr. Moore also testified. The court considered physical evidence, including photographs of Ms. Fluellen's injuries and apartment, jail house calls, including those between Ms. Fluellen and Mr. Moore, the victim's rape kit, DNA test results, and hospital images and records.

{¶10} The testimony and evidence at trial revealed that Mr. Moore forced his way into Ms. Fluellen's apartment in Willoughby Hills, Ohio. He violently assaulted her for more than two hours, which included punching, kicking, strangling, and raping her. Ms. Fluellen was pregnant at the time. A few hours later, in the early morning hours, Ms. Fuellen awoke and drove to her friend's house where she slept on the couch. When Ms.

4

Fluellen returned to her apartment the following morning, Mr. Moore had left, and her belongings were strewn about and the apartment damaged. A knife was stuck in a vertical position in her kitchen counter.

{¶11} Ms. Fluellen drove directly to the Willoughby Hills Police Department, and after a few questions by Officer Walsh who noticed her injuries, the paramedics were called to transport her to Lake West Hospital emergency department. From there she was transported to Hillcrest Hospital for purposes of a sexual assault exam. The DNA samples in the rape kit matched the swabs taken from Mr. Moore. Ms. Fluellen suffered two nasal fractures, extensive bruising, including strangulation marks to her neck, in addition to the rape and sexual assault.

{¶12} There are numerous recorded conversations between Mr. Moore and Ms. Fluellen in regard to the incident, her statements to the police, and her upcoming trial testimony. In those calls, Mr. Moore pressured Ms. Fluellen to recant her statements and relay a different story when she testified. Ms. Fluellen expressed concern that their stories did not match.

{¶13} When she did take the stand and the state cross-examined her, Ms. Fluellen claimed she could not recall her earlier statements to the police, paramedics, or hospital personnel, and when her recorded statements were played in an attempt to refresh her recollection, her recollection did not improve, but she did identify her voice on the recordings. She denied that Mr. Moore had strewn her belongings all over the apartment, testifying the items had been there before and that the two holes in the wall were from when she thought she "threw something."

{¶14} Mr. Moore's counsel then cross-examined Ms. Fluellen. Ms. Fluellen began to give Mr. Moore's version of events. When she was asked whether she lied to the police and hospital personnel about what happened, she said, "yes." The trial court then stopped her and inquired whether she would be able to obtain an attorney because the questions defense counsel was posing may cause her to commit the crime of perjury. The trial court informed Ms. Fluellen if she did not hire counsel, the trial court was going to call a public defender to counsel her so the trial could continue.

{¶15} A public defender was summoned, who counseled Ms. Fluellen for 45 minutes and represented her for the remainder of her testimony. When her testimony resumed, she denied being raped or assaulted and pleaded the Fifth Amendment when questioned about her different statements to the grand jury and the police. She said Mr. Moore never told her what to say and that when she first went to the police, she was angry with Mr. Moore for cheating on her.

{¶16} Mr. Moore's version of that night was that he, his friend "Chum-Chum" (aka Reginald Witherspoon), and two women went to Ms. Fluellen's apartment to leave Ms. Fluellen some money. They had all been drinking, and Mr. Moore was highly intoxicated. Ms. Fluellen arrived home unexpectedly, was upset to find the women in her home, and all three women began viciously fighting. Mr. Moore broke up the altercation and left with the two women. Ms. Fluellen called Chum-Chum, and Mr. Moore returned to her apartment. He found her laying there and attended to her injuries, after which they had consensual sex and fell asleep.

{¶17} Mr. Moore did not call the two unknown women (he claimed to not know their names) or Chum-Chum to testify on his behalf (because he had outstanding

6

warrants). He explained that his testimony was inconsistent from his prior statements to the detective because he "didn't want to make it seem like I was killing myself with my parole."

{¶18} The trial court found Mr. Moore guilty on all eight counts, deferred sentencing, and referred Mr. Moore to the adult probation department for a presentence investigation report and a victim impact statement.

{¶19} A sentencing hearing was held on May 3, 2018. The trial court denied Mr. Moore's motion to vacate sentence and conviction/motion to dismiss. The trial court found that for sentencing purposes, Counts 2 and 4 (kidnapping and felonious assault) merged with Count 3 (kidnapping), and that Counts 5 and 7 (kidnapping and sexual battery) merged with Count 6 (rape). The trial court sentenced Mr. Moore to 3 years on Count 1 (aggravated burglary), 8 years on Count 3 (kidnapping), 9 years on Count 6 (rape), and 90 days in jail on Count 8 (intimidation of witness/victim in a criminal case). The sentences on Counts 1, 3, and 6 were ordered to be served consecutively and concurrent to the sentence on Count 8, for a total term of imprisonment of 20 years.

{¶20} The trial court also ordered Mr. Moore to pay all court costs and the costs of prosecution in the amount certified by the Lake County Clerk of Courts.

{¶21} Mr. Moore now timely appeals, raising the following five assignments of error:

{¶22} "[1] The State failed to present sufficient evidence to sustain a conviction against Appellant.

{¶23} "[2.] Appellant's convictions are against the manifest weight of the evidence.

7

**{¶24}** "[3.] The trial court erred in permitting the state to impeach its own witness with a prior inconsistent statement and in admitting that hearsay statement as substantive evidence.

**{¶25}** "[4.] The trial court erred by ordering appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and HB 86.

**{¶26}** "[5.] The court costs imposed at the sentencing hearing infringes upon Appellant's rights under the Eighth and Fourteenth Amendments to the United States Constitution, R.C. 2929.18, R.C. 2919(b)(5) [sic], R.C. 2947.14, and related sections of the Ohio Constitution."

## Sufficiency of the Evidence

**{¶27}** In his first assignment of error, Mr. Moore contends there was insufficient evidence to find him guilty of any of the crimes of which he was convicted because there was no reliable or substantive evidence linking him to the crimes.

**{¶28}** "[T]he standard of review for a sufficiency of the evidence claim is 'whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weight the evidence.' * * * 'In essence, sufficiency is a test of adequacy[;] [w]hether the evidence is legally sufficient to sustain a verdict * * *.'" (Citations omitted.) *State v. Rice, Jr.*, 11th Dist. Lake Nos. 2018-L-065 & 2018-L-066, 2019-Ohio-1415, ¶65. "Sufficiency of the evidence tests the burden of production." *Id., see also State v. Thompkins*, 78 Ohio St.3d 380 (1997).

8

**{¶29}** More specifically, Mr. Moore argues that because Ms. Fluellen denied he caused her injuries, there was no evidence that he harmed or assaulted her in any way.

**{¶30}** We disagree. Quite contrary to Mr. Moore's argument, there is more than sufficient evidence to prove he harmed Ms. Fluellen beyond a reasonable doubt. Ms. Fluellen's initial statements to the police, paramedics, and hospital personnel, combined with the physical evidence taken from her and Mr. Moore, such as the rape kit, scans of her injuries, Mr. Moore's DNA references, photographs taken of her apartment, and the jail house calls between Ms. Fluellen and Mr. Moore more than support the elements of kidnapping, felonious assault, rape, and intimidation of a witness. Just because Ms. Fluellen refused to testify at trial in a manner consistent with her initial statements does not mean there was insufficient evidence presented to support the elements of the charged offenses.

**{¶31}** Mr. Moore's first assignment of error is without merit.

### Manifest Weight of the Evidence

**{¶32}** Mr. Moore further argues in his manifest weight of the evidence assignment of error that the only evidence linking Mr. Moore to this case were Ms. Fluellen's previous out of court statements.

**{¶33}** "When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered." (Citations omitted.) *Rice* at ¶81. *See also Thompkins.*

9

**{¶34}** "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. * * * The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. * * * The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given to the evidence and credibility of witnesses." (Citations omitted.) *Id.* at ¶82.

**{¶35}** Mr. Moore argues his convictions were not based upon admissible evidence because the trier of fact did not "properly consider the live testimony of the victim" or Mr. Moore's version of events.

**{¶36}** A review of the evidence and trial testimony reveals otherwise since the manifest weight of the evidence heavily supports the verdict. As noted in our analysis of the first assignment of error, there is more than enough evidence supporting a finding that Mr. Moore violently assaulted and raped Ms. Fluellen despite her change of testimony and Mr. Moore's version of events. Mr. Moore's DNA was linked to Ms. Fluellen's physical evidence taken from the rape kit. In addition, there was photographic and medical evidence of her injuries.

**{¶37}** Mr. Moore was unable to produce any alibi witnesses; the two women were unknown, and Chum-Chum did not testify. (Chum-Chum did appear at the sentencing hearing and explained to the court he was not able to testify during trial because he was "on the run" as a result of a probation violation.)

**{¶38}** Moreover, in the jailhouse telephone call recordings, Mr. Moore and Ms. Fluellen had discussions about how their stories needed to match. In one telephone call,

Mr. Moore tells Ms. Fluellen to "Just stick to the script. Just stick to the script." Ms. Fluellen's initial version of the incident radically changed after the jailhouse calls.

**{¶39}** "It is well settled that when assessing the credibility of witnesses, '[t]he choice between the credibility of witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.' * * * Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." (Citations omitted.) *Id.* at ¶84.

**{¶40}** In short, the trial court was free to believe the version of events presented by the evidence and testimony of the state over that presented by Mr. Moore.

**{¶41}** Mr. Moore's second assignment of error is without merit.

### Prior Inconsistent Statements

**{¶42}** In his third assignment of error, Mr. Moore contends the trial court erred in calling the victim as a court's witness and by permitting the state to impeach its own witness with a prior inconsistent statement and in admitting that hearsay statement as substantive evidence.

**{¶43}** These arguments are unavailing because the court called Ms. Fluellen as its own witness after granting the state's pretrial motion pursuant to Evid.R. 614(A) grounded upon the state's concern Ms. Fluellen would be a hostile witness and therefore, as a court's witness. The Evid.R. 607 requirement that the state show surprise and damage before impeaching its own witnesses is inapplicable. *See* Evid.R. 607(A) ("* * * the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage").

11

{¶44} Pursuant to Evid.R. 614(A): "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."

{¶45} "The court's power to call a witness pursuant to Evid.R. 614(A) is inherent, and should be exercised in fulfillment of the court's fundamental obligation to assist in arriving at the truth." *State v. Brown*, 11th Dist. Lake No. 2014-L-032, 2015-Ohio-950, ¶15, citing *State v. Davis*, 11th Dist. Lake No. 92-L-089, 1993 WL 548033 (Dec. 10, 1993), citing Evid.R. 614(A), Staff Notes. "The decision whether to call individuals as witnesses of the court is a matter within the trial court's discretion." *Id.*, citing *State v. Knapp*, 11th Dist. Ashtabula No. 2011-A-0064, 2012-Ohio-2354, ¶69. Accordingly, "'a trial court does not abuse its discretion in calling a witness as a court's witness when the witness's testimony would be beneficial to ascertaining the truth of the matter and there is some indication that the witness's trial testimony will contradict a prior statement made to police." *Id.*, citing *State v. Schultz*, 11th Dist. Lake No. 2003-L-156, 2005-Ohio-345, ¶29.

{¶46} Mr. Moore cites *State v. Clay*, 8th Dist. Cuyahoga No. 90453, 2009-Ohio-1235, in support of his proposition that the state may not cross-examine their own witness with a prior written statement without showing surprise or affirmative damage as required by Evid.R. 607. Mr. Moore incorrectly applies *Clay* to the instant case.

{¶47} In *Clay*, Evid.R. 614(A) was not applicable because the court denied the prosecutor's request to declare the witness a court witness. *Id.* at ¶15. Thus, the cross-examination of the witness by the prosecutor and the admission of the prior written statement as substantive evidence was improper.

12

{¶48} In this case, the trial court granted the state's motion to call Ms. Fluellen as a court witness several weeks before trial. As the state argued in its motion, Ms. Fluellen initially made many incriminating statements accusing Mr. Moore of assaulting her in her home to police officers, paramedics, and medical personnel. Later, on the date of Mr. Moore's arrest, Ms. Fluellen recanted her initial statements and claimed unknown females attacked her, causing her injuries. She maintained her second version of events in her testimony before the grand jury. The state further stated that Ms. Fluellen implied she did not want to be cooperative and that she was allied with Mr. Moore. Accordingly, the trial court granted the state's motion, allowing the state to cross-examine Ms. Fluellen and impeach her testimony with her prior inconsistent statements.

{¶49} This court has previously held that Evid.R. 607's requirement of a prior showing of surprise and damage is not applicable to a court's witness. *State v. Sealey*, 11th Dist. Lake No. 2002-L-100, 2003-Ohio-6697, at ¶30. We are not alone in this determination. In a case decided within the first two years after the implementation of the rules of evidence, *State v. Dacons*, 5 Ohio App.3d 112 (10th Dist.1982), the Tenth District found no violation of Evid.R. 607 when the trial court, at the state's request, called a witness and then permitted impeachment of that witness with a prior inconsistent statement even though the state could not demonstrate surprise. The Supreme Court of Ohio later took that same stance in *State v. Apanovitch,* 33 Ohio St.3d 19, 22 (1987)*.*

{¶50} Judge (later Chief Justice) Moyer explained in *Dacons, supra,* the origin of this now long-standing view of the interplay between Evid.R. 607 and 614 and the distinction in implementation arising when the witness is called by the court, even at the state's request. He wrote that *State v. Adams*, 62 Ohio St.2d 151 (1980), controls despite

13

being decided prior to the effective date of the Ohio Rules of Evidence because "[t]he Ohio Rules of Evidence, and in particular Evid.R. 607 and 614, codify the common-law evidentiary rules applicable in Ohio prior to the adoption of the Rules of Evidence as pertinent to this case." *Dacons* at 114.

{¶51} In *Adams*, *Dacons,* and this case, a witness was called, at the state's request, as the court's witness because the witness had made statements in the past that would be inconsistent with the expected trial testimony. Because the state expected that the witness' trial testimony would be different than pretrial statements and in order to avoid being unable to test the credibility of the testimony the witness was expected to give via prior inconsistent statements, the state moved to have the witness declared the court's witness.

{¶52} The Supreme Court in *Adams* observed that under Ohio common-law rules of evidence had the state called the witness, the voucher rule would have prevented it from any attempt to impeach the credibility of its own witness, and the court held "[a] trial court possesses the authority in the exercise of sound discretion to call individuals as witnesses of the court. *Adams* at paragraph four of the syllabus. Therefore, the court rejected the defense argument that it would be unfair to permit the state to gain the right to impeach the witness via leading questions, and the court found justification for the court's calling the witness so that the state could test the witness' credibility through impeachment because the testimony would be beneficial to the jury in its fact-finding role.

{¶53} When the reason underlying the state's request is to avoid being unable to test the credibility of a key witness by prior out-of-court statements, and keeping in mind the provision of Evid.R. 102 that "[t]he purpose of these rules is to provide procedures for

14

the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined" and that the "rules shall be construed to state the common law of Ohio unless the rule clearly indicates that a change is intended and shall not supersede substantive statutory provisions," we agree with the court in *Dacons* that Evid.R. 607 did not alter the common law rule "applicable at the time of the *Adams* case as regards the use of inconsistent statements to impeach a witness called as the court's witness upon application by the state which could not show surprise." We also agree that "Evid.R. 614, which permits the court on its own motion or at the suggestion of a party to call witnesses, is completely consistent with the common law applicable at the time of the *Adams* case," and "[s]o far as pertinent, Evid.R. 607 and 614 state the common law applicable at the time the *Adams* case was decided." *Dacons* at 115.

{¶54} Further, the trial court was clear that it was not admitting Ms. Fluellen's prior inconsistent statements as substantive evidence; only to test the witness' credibility, which is consistent with the accepted concept when the surprise requirement is in play that a prior inconsistent statement is only admissible for impeachment only and not for the truth of the matter asserted. *State v. Dick*, 27 Ohio St.2d 162, 165 (1971). Thus, after Patrolmen Walsh was permitted by agreement of counsel and the trial court to describe the different versions of Ms. Fluellen's statements (the statement at the hospital, the recorded statement made at her apartment after she was released from the hospital, which was consistent with the first, and her recorded and short written statement a month later, in which she describes the two women attacking her), the trial court stated, "And just so the record is clear. I've admitted that evidence pursuant to the statements of counsel, not for the truth of the matter asserted, but for a comparison between the

15

circumstances of each version and differences between each version as far as the components and things of that sort."

**{¶55}** Mr. Moore's third assignment of error is without merit.

### Consecutive Sentences

**{¶56}** In Mr. Moore's fourth assignment of error, he contends that the trial court erred in imposing consecutive sentences because it did not make the requisite findings pursuant to R.C. 2929.14(C)(4).

**{¶57}** Appellate review of a felony sentence is governed by R.C. 2953.08(G)(2), which provides:

**{¶58}** "The court hearing on appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence * * * given by the sentencing court.

**{¶59}** "The appellate court may * * * modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing.  The appellate court's standard for review is not whether the sentencing court abused its discretion.  The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

**{¶60}** "(a) The record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * *;

**{¶61}** "(b) That the sentence is otherwise contrary to law."

**{¶62}** "The clear and convincing standard in R.C. 2953.08(G)(2) is highly deferential as the standard is written in the negative."  (Citation omitted.)  *State v. Corti*, 11th Dist. Lake No. 2016-L-129, 2018-Ohio-903, ¶17.  "It does not say that the trial judge

16

must have clear and convincing evidence to support its findings. * * * Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. * * * Accordingly, this court can only modify or vacate a sentence if it determines, by clear and convincing evidence, that the record does not support the trial court's decision or if the sentence is otherwise contrary to law." (Citations omitted.) *Id.*

**{¶63}** "In order to impose consecutive prison terms for convictions of multiple offenses, a trial court must make three statutory findings. RC. 2929.14(C); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37. First the court must find that consecutive sentences are necessary to protect the public or to punish the offender. R.C. 2929.14(C)(4). Second, the court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public. *Id.* As for the third required finding, a number of different findings will suffice * * *." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, ¶252. One of those findings is if the "offender committed one or more of the multiple offenses while the offender * * * was under post-release control for a prior offense." R.C. 2929.14(C)(4)(c).

**{¶64}** The Supreme Court of Ohio in *Beasley*, *supra*, held that "the trial court must make the requisite findings both [emphasis sic] at the sentencing hearing and in the sentencing entry." *Id.* at ¶253, citing *Bonnell*, *supra* at ¶37.

**{¶65}** We turn first to the sentencing hearing, where the trial court properly made all three statutory findings pursuant to R.C. 2929.14(C)(4). The trial court appropriately reviewed all of the relevant factors of seriousness and recidivism set forth in R.C. 2929.12. The trial court noted the victim suffered serious physical and psychological harm, Mr.

Moore's "lengthy criminal history," as well as the fact that he committed these offenses while under federal supervised release. Further, Mr. Moore displayed no genuine remorse, did not respond favorably to previously imposed sanctions, and was highly intoxicated when he committed the crime.

{¶66} The trial court then made the requisite statutory findings pursuant to R.C. 2929.14(C), stating that: "consecutive sentences are necessary to protect the public and punish this offender, would not be disproportionate to his conduct and the danger he poses. And the crimes were committed while on post-release control from the federal institution. The court also determines that the harm was so great or unusual that a single term would not adequately reflect the seriousness of the conduct, and his criminal history shows that consecutive terms are needed to protect the public from future crime."

{¶67} Next, we turn to a review of the sentencing judgment, which also clearly makes all three requisite findings. Thus, the entry states: "[p]ursuant to R.C. 2929.14(C)(4) and R.C. 2929.19(B)(2)(b), the Court finds for the reasons stated on the record that consecutive sentences are necessary to protect the public from future crime or to punish the Defendant and are not disproportionate to the Defendant's conduct and the danger the Defendant poses to the public; that the Defendant committed one or more of the multiple offenses while under post-release control for a prior offense; that at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses committed by the Defendant was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the Defendant's conduct; and the Defendant's history of criminal conduct demonstrates that

18

consecutive sentences are necessary to protect the public from future crime by the Defendant."

**{¶68}** As there was no error in the trial court's oral or written imposition of Mr. Moore's sentence, Mr. Moore's fourth assignment of error is without merit.

### Mandatory Court Costs

**{¶69}** In his last assignment of error, Mr. Moore contends the court costs imposed at the sentencing hearing infringe his rights under the Eighth and Fourteenth Amendments to the United States Constitution, R.C. 2929.18, R.C. 2919(b)(5) [sic], R.C. 2947.14, and related sections of the Ohio Constitution because the court did not consider Mr. Moore's ability to pay.

**{¶70}** We recently addressed this same argument in *State v. Tackett*, 11th Dist. Ashtabula No. 2018-A-0053, 2019-Ohio-1419. Thus, we reviewed that: "R.C. 2947.23(A)(1)(a) governs the imposition of court costs. It states, in relevant part: "In all criminal cases, * * * the judge * * * shall include in the sentence the costs of prosecution, * * * and render a judgment against the defendant for such costs.

**{¶71}** "The Supreme Court of Ohio has held that R.C. 2947.23 *requires* a court to assess costs against all convicted defendants, including indigent defendants. *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, ¶8; *State v. Hayes*, 11th Dist. Ashtabula No. 2004-A-0024, 2005-Ohio-2881, ¶8. Therefore, 'a defendant's financial status is irrelevant to the imposition of court costs.' *State v. Clevenger*, 114 Ohio St.3d 258, 2007-Ohio-4006, ¶3." *Id.* at ¶8.

**{¶72}** As in *Tackett,* Mr. Moore argues that the trial court was required to consider his ability to pay, citing to several inapplicable legal authorities. The first, "R.C.

19

2929.19(B)(5), which requires a trial court to consider an offender's present and future ability to pay a *financial sanction*; however, 'court costs are not financial sanctions.' *State v. Taylor*, 11th Dist. Portage No. 2011-P-0090, 2012-Ohio-3890, ¶48. Consequently, R.C. 2929.19 is inapplicable to the imposition of costs, and a trial court need not consider a defendant's ability to pay. *Id.*" *Id.* at ¶10.

{¶73} The second is R.C. 2947.14, which relates to the imposition of fines. "The trial court did not impose a fine. Accordingly, R.C. 2947.14 is also not applicable. *See State v. Brock*, 8th Dist. Cuyahoga No. 104334, 2017-Ohio-97, ¶20 (finding R.C. 2947.14 inapplicable to the imposition of court costs)." *Id.* at ¶11.

{¶74} Finally, Mr. Moore claims the imposition of court costs violates the Eighth Amendment to the U.S. Constitution's prohibition against cruel and unusual punishment. "The Supreme Court of Ohio has previously rejected this argument, holding that 'costs are not punishment, but are more akin to a civil judgment for money.' *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶240, quoting *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, ¶15." *Id.* at ¶12.

{¶75} Moreover, we note that the Supreme Court of Ohio reviewed the relevant law as to court costs in *Beasley, supra*: "[t]he General Assembly amended R.C. 2947.23 by adding division (C): 'the court retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution * * * at the time of sentencing *or at any time thereafter*.' (Emphasis added.) In simple terms [appellant] does not need this court to remand this case in order for him to file a motion to waive costs. Therefore, his request for a remand on this basis has no merit." *See also State v. Reed,* 8th Dist. Cuyahoga No. 106796, 2018-Ohio-3187, ¶12 (Finding that pursuant to R.C. 2947.23(C), the court did

not need to remand for the appellant to obtain an order waiving court costs since the appellant can file a motion to waive court costs in the trial court at any time).

{¶76}  As in *Beasley*, Mr. Moore's request to review the trial court's imposition of court costs is without merit since he is free to file a motion to waive court costs in the trial court "any time" if he is indigent.

{¶77}  Mr. Moore's fifth assignment of error is without merit.

{¶78}  The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.

21